**UNITED STATES BANKRTUPCY COURT**
**DISTRICT OF MINNESOTA**

In Re:

Steven L. Spence
Theresa A. Spence

      Debtors.

Bky No. 20-32780
Chapter 12.

---

**NOTICE OF MOTION AND MOTION TO INCUR SECURED INDEBTEDNESS**

TO: The Chapter 12 Trustee and all other entities requesting service pursuant to Local Rule 9013-3.

1. The debtors, Steven L. Spence and Theresa A. Spence, through their undersigned attorney, move the Court for an Order to Incur Secured Indebtedness and give Notice of hearing.

2. The Court will hold a telephonic hearing on this motion at 10:30 am on March 17, 2021, before the Hon. Judge Constantine in Courtroom 2C, 316 North Robert Street, St. Paul, MN 55101. This is a telephonic hearing. If you wish to participate, please contact the U.S. Bankruptcy Court for instruction (651) 848-1000.

3. Any response to this Motion must be filed and delivered not later than March 12, 2021, which is five days before the time set for the sharing (including Saturday, Sunday, and holiday). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1007-1. This is a core proceeding. The petition

commencing this case was filed on December 15, 2020. This case is pending in this Court.

5. This motion arises under 11 U.S.C. § 364(c). This motion is filed under Bankruptcy Rules 4001(c) and 9014 and Local Rules 9006-1, 9013-2 and any other applicable rules.

6. Debtor has attempted, but has not been able to obtain unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense.

7. The debtors respectfully request an order authorizing them to borrow operating funds from Agrifund, LLC (Agrifund) and to grant Agrifund a lien in their 2021 crops to be grown and related proceeds from crop insurance and disaster assistance programs (hereinafter the "2021 crop and collateral related to the 2021 crop"), all of which are otherwise unencumbered pursuant to 11 U.S.C. § 364(c)(2). Because no security interests exist in the 2021 crop and collateral related to the 2021 crop, no adequate protection is being offered. Agrifund has no outstanding claims or unsatisfied liens against the debtors.

8. A need exists for the debtors to obtain funds in order to continue the operation of their business. Without such funds the debtors will not be able to pay operating expenses or purchase inventory or supplies to plant and maintain their 2021 crops. The debtors do not have the unencumbered funds necessary to meet such necessary expenses.

9. The debtors propose to enter into a loan, subject to this Court's approval, of this motion based upon the terms contained in the loan agreement attached to this motion. Under the proposed credit agreement, Agrifund will extend credit to the debtors in an amount up to $245,000 at a fixed interest rate of 10 percent, with a maturity date of January 15, 2022.

10. The debtors further request the stay be lifted to allow Agrifund to perfect its security interest proposed to be granted in the 2021 crop and collateral related to the 2021 crop by taking any and all actions it deems necessary for such proposes, including, but not limited to UCC filings, CNS filings, and execution of government and agency assignment forms necessary to perfect or protect a security interest in governmental and agency payments and entitlements applicable.

11. This motion is in the best interest of this bankruptcy estate.

WHEREFORE, the debtors request this Court enter an order authorizing the debtors to incur post-petition financing and to grant a lien in the 2021 crop and collateral related to the 2021 crop to Agrifund, pursuant to 11 U.S.C. § 364(c), and lifting the automatic stay to allow Agrifund to perfect its security interest.


Dated: _March 3, 2021_          Signature: _____
                                          Paul V. Sween
                                          Attorney for debtors.
                                          300 First St. NW
                                          Austin MN, 55912
                                          (507) 438-4632

## VERIFICATION

I, Steven L. Spence and Theresa A. Spence, in the foregoing motion and notice of motion, declare under penalty or perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: _____3 - 2 - 2021_____

Signature _~Steven L. Spence~_
Steven L. Spence

Signature _~Theresa A. Spence~_
Theresa A. Spence

## UNITED STATES BANKRTUPCY COURT
## DISTRICT OF MINNESOTA

In Re:

Steven L. Spence
Theresa A. Spence

      debtors.

Bky No. 20-32780
Chapter 12.

## MEMORANDUM OF LAW AND FACT

The debtors request authorization from the Court to obtain an operating loan from

Agrifund in an amount up to $245,000 and to grant a security interest to Agrifund in the debtors'

2021 crops to be grown and related proceeds from crop insurance and disaster assistance

programs, pursuant to 11 U.S.C. § 364(c)(2). A need exists for the debtors to obtain funds in

order to continue the operation of their business. Without such funds the debtors will not be able

to pay operating expenses or purchase inventory or supplies to plant and maintain their 2021

crops. The debtors do not have the unencumbered funds necessary to meet such necessary

expenses. Debtor will file under 11 U.S.C. § 364 (c)(2).

Agrifund, due to their diligence towards their customers, is unwilling to allow their

customers to sign any binding loan agreements until the Court has approved the Motion to Incur

Secured Indebtedness. If Agrifund were to have the debtors sign the loan agreement prior to

Court approval, there would be an automatic 3.5% loam fee expected upon signing. Agrifund

considers this a risky proposal when the Courts ruling is unknown. Upon the Courts approval,

the debtors will have available financing with Agrifund and Agrifund will perfect their interest

according to UCC standards. However, the loan documents, unsigned, have been attached to this

motion.

**The debtors-in-possessions are unable to obtain credit otherwise (11 U.S.C. § 364(c)).**

The debtors are in need of a loan for the expenses required in a farming operation; crop inputs costs, crop insurance, and other farming needs. The debtors are financially unable to afford these expenses without assistance from third-parties, and the debtors have successfully fulfilled prior loans and obligations with Agrifund. Debtors are also unable to receive credit under 11 U.S.C. §§ 503(b) or 507(b). The debtors have attached to this Motion a copy of the proposed credit agreement. Agrifund is willing to offer a loan to the debtors under the following conditions:

1. Agrifund is willing to enter into a Commercial Loan Agreement for an amount up to $245,000.00.

2. Agrifund will make an extension of credit at the fixed rate of 10%.

3. The advances made by Agrifund will be discretionary and are meant to be used towards the maintaining and harvesting of crops.

4. Agrifund will charge a 3.5% fee for administering the loan.

5. The debtors may not use all of these funds, however, the $245,000.00 is the maximum limit offered from Agrifund.

6. More information about advances made from Agrifund can be found in Section 3 of the Commercial Loan.

7. Agrifund will be granted a lien in 2021 crop and collateral related to the 2021 crop. The collateral is not subject to any other security interests.

8. Agrifund will have the right to inspect debtors financial records and physical premises upon lenders reasonable notice.

9. Should default occur, debtors acknowledge and agree obligations owed to Agrifund are due and payable on demand, and the lender will also have the right to accelerate the obligations after that default.

10. The date of maturity is January 15, 2022.

These terms and conditions mirror prior loan agreements conducted by debtors and Agrifund. Due to the debtors' bankruptcy status, the only modified term is the fixed interest rate at 10%, however, everything else remains consistent from previous years.


**The debt incurred will not be otherwise subject to a lien. (11 U.S.C. § 364 (c)(2)).**

A trustee, or debtors-in-possession may be authorized to obtain credit, after notice and a hearing when that credit or incurring of debt is secured by a lien on property of the estate that is not otherwise subject to a lien. 11. U.S.C. §552 allows any property acquired by the estate or by the debtors after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. Debtors filed this case on December 15, 2020, and the Community Bank of Mankato have a continuing lien over the 2020 crop. However, the Court today is considering the approval for incurring debt over the future 2021 crop which is considered post-petition property. This future crop is not subject to the pre-petition liens prescribed by any other secured or unsecured creditor due to the protections offered by 11 U.S.C. §552. Therefore, the 2021 crops are interest free and would allow for the debtors to incur post-petition secured indebtedness.

The 2021 crop would also not fall into the exemptions of 'proceeds, products, offspring, or profits acquired by the estate' as stated in 11 U.S.C. 552(b) "Even if [a] financing statement in

security agreements were construed to grant [a] security interest in after-acquired crops, security interest would have been cut off when debtors filed bankruptcy petition; properly acquired by debtor post-petition was not subject to prepetition security agreement."[1] The 2021 crops will not be subject to any liens and, therefore, the Bankruptcy rules allow for a newly secured interest held by Agrifund.

**The debtor is able to satisfy the requirements of Bankruptcy Rule 4001(c).**

By and through 11 U.S.C. § 364(c), debtors are seeking permission from the Court to incur secured indebtedness against otherwise unencumbered property. Pursuant to the requirements of Bankruptcy Rule 4001(c)(1)(B), debtors shall address the ten requirements in return.

(i)     The debtors are seeking to grant a priority lien in their 2021 crops, crops to be grown, related proceed from crop insurance, disaster assistance programs and crop pursuant to 11 U.S.C. § 364(c)(2).

(ii)     Adequate protection is not addressed because the debtors are requesting to incur debt upon post-petition property which is not encumbered by prior liens.

(iii)     Priority does not need to be addressed in this case because the 2021 crops are not subject to any existing liens.

(iv)     The automatic stay shall only be modified to the extent that it is necessary to allow Agrifund to perfect a future lien.

(v)     The debtors are not seeking any waiver or modification to existing authority or expectation to file a plan or an extension of time to do so.

---

[1] *In re Peeler,* Bkrtcy.E.D.Ark. 1992, 145 B.R. 973

(vi)   The debtors are not seeking to modify any existing deadlines to file a plan or to have a confirmation hearing.

(vii)  The debtors are not seeking a waiver or modification of non-bankrtupcy law as it relates to Agrifund's ability to perfect its lien.

(viii) The debtors are not seeking to release, waive or limit any causes of action they might possess whether known or unknown.

(ix)   The debtors are not seeking to indemnify any entities.

(x)    The debtors are not seeking to release, waive or limit any right under § 506(c).

(xi)   The debtors are not seeking to grant Agrifund a lien on any claim or cause of action arising under the Bankruptcy Code.

Debtors respectfully request the Court grant their request to incur secured indebtedness. Without allowing for this line of credit, the debtors will be unable to administrate and maintain their farming operation. Without this capital, the Debtors will be unable to execute the Chapter 12 bankruptcy plan.

WHEREFORE, obtaining financing and granting a lien to Agrifund in the 2021 crops and collateral provides the only viable option for the debtors to continue their farming operation, and is in the best interest of the bankruptcy estate.

Dated: _March 3, 2021_          Signature:_____
                                Paul V. Sween
                                Attorney for debtors.
                                300 First St. NW
                                Austin MN, 55912
                                (507) 438-4632

DocuSign Envelope ID: 3125D866-8CED-4663-8A6C-2B9CC43D6224

# DEMAND PROMISSORY NOTE
## (Agricultural - Draw)

**DATE AND BORROWERS.** This Demand Promissory Note is dated 3/12/2021____ and is made by
Steven Lawrence Spence and Theresa Ann Spence

(each and all of such Persons, singularly and jointly and severally, "**Borrower**"). Each Person signing this Demand Note as a "Borrower" shall be a Borrower hereunder and shall be liable with respect to the Obligations on a joint and several basis with each other Borrower and each other Credit Party. Use of the singular "Borrower" shall mean and refer to each Borrower, singularly or collectively, as the context may require.

1. **DEFINITIONS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:

    A. **Demand Note.** Demand Note means this Demand Promissory Note, as the same may be amended, restated, supplemented, or otherwise modified or replaced or substituted from time to time.

    B. **Holder.** Holder means Lender or any other Person or Persons having an interest in this Demand Note or any of the indebtedness evidenced hereby.

    C. **Interest Rate.** Interest Rate means 10.00 %__ per annum.

    D. **Lender.** Lender means Agrifund, LLC, a Delaware limited liability company.

    E. **Maturity Date.** Maturity Date means 1/15/2022___.

    F. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of 3/12/2021 by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

    G. **Stated Principal Amount.** Stated Principal Amount means $ 244,415.00_____.

2. **PROMISE TO PAY.** For value received, Borrower promises to pay to the order of Holder amounts advanced from time to time under the terms of this Demand Note and the other Loan Documents up to the Stated Principal Amount or such other amount as may be owing by Borrower to Holder under the Loan Documents (the "**Principal**"), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Demand Note is paid in full.

3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Demand Note at the Interest Rate.

    A. **Interest After Default.** At any time that any Event of Default exists the Interest Rate shall automatically and without notice to Borrower be increased by 6.00% per annum.

    B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Demand Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to Borrower or such other Person who might be lawfully entitled thereto.

    C. **Statutory Authority.** The amount assessed or collected on this Demand Note is authorized by the Louisiana usury laws under La. Civ. Code art. 2924 and La. Rev. Stat. Ann. §§ 9:3500 et. Seq.

    D. **Accrual.** Interest on this Demand Note shall be calculated on the basis of a year of 365 or 366 days, as applicable, for the actual number of days elapsed.

4. **PAYMENT.** BORROWER ACKNOWLEDGES AND AGREES THAT THE OBLIGATIONS EVIDENCED BY THIS DEMAND NOTE ARE DUE AND PAYABLE ON DEMAND AND THAT HOLDER MAY MAKE DEMAND FOR PAYMENT OF SUCH OBLIGATIONS AT ANY TIME, WITH OR WITHOUT THE OCCURRENCE OF ANY OTHER FACT, CIRCUMSTANCE, OR CONTINGENCY AND FOR ANY REASON. BORROWER AGREES TO PAY ALL OBLIGATIONS ON THE EARLIER TO OCCUR OF (A) THE DATE ON WHICH HOLDER DEMANDS PAYMENT AND (B) THE MATURITY DATE. If any payment is due on a date which is not a Business Day, then such payment shall be due on the immediately following Business Day.

5. **PREPAYMENT.** Borrower may prepay this Loan in full or in part at any time, without premium or penalty.

6. **SECURITY.** The Obligations under this Demand Note and all other Obligations are secured by the Security Documents.

7. **WAIVERS AND CONSENT.** To the maximum extent permitted by law, Borrower waives protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate, notice of dishonor, and any and all other defenses to payment (other than the defense of Payment in Full) and notices.

8. **NO WAIVER.** No failure or delay on the part of any Holder to exercise any right under this Demand Note or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

9. **SUCCESSORS AND ASSIGNS.** This Demand Note shall be binding upon Borrower and Borrower's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Holder and its successors and assigns. Borrower may not assign any of its rights or obligations under this Demand Note or the other Loan Documents.

10. **ADDITIONAL WAIVERS.** To the extent legally permitted, Borrower additionally waives:

    A. The benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

B. The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

C. The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

D. All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

11. **EFFECT OF SIGNATURES.** By signing, Borrower agrees to the terms set forth in this Demand Note and certifies that Borrower has received a copy of this Demand Note and that it has completely read and understands this Demand Note.

**IN WITNESS WHEREOF,** each Borrower has executed and delivered this Demand Note as of the date first above written:

```
                                    Borrower:
                                    Steven Lawrence Spence

Address for Notices:
Steven Lawrence Spence
13666 514th Ave                     By: _____
Vernon Center, MN  56090
                                        Steven Lawrence Spence


                                    Borrower:
                                    Theresa Ann Spence


Address for Notices:
Theresa Ann Spence                  By: _____
13666 514th Ave
Vernon Center, MN  56090                Theresa Ann Spence
```

# SECURITY AGREEMENT

**DATE AND PARTIES.** This Security Agreement is dated as of <u>3/12/2021</u> and is by and between or among AGRIFUND, LLC, a Delaware limited liability company ("Lender"), and <u>Steven Lawrence Spence and Theresa Ann Spence</u>

each of the Persons party hereto as a "Debtor" (each and all of such Persons, singularly and jointly and severally, "**Debtor**").

1. **DEFINITIONS AND RELATED TERMS.** Capitalized terms used, but not defined herein, shall have the meanings given such terms under the Loan Agreement (as defined below). In addition to any other terms defined herein, the following terms, as used herein, shall have the following meanings:

   A. **Agreement.** Agreement means this Security Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   B. **Collateral.** Collateral means all of the property described on Exhibit A, attached hereto and made a part hereof.

   C. **Cross-Collateralization Agreement.** Cross-Collateralization Agreement means any now existing or hereafter arising cross-collateralization agreement or similar instrument executed and delivered by Debtor in favor of Lender, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   D. **Loan Agreement.** Loan Agreement means that certain Commercial Loan Agreement dated as of the date hereof by and between Lender and Borrower, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   E. **Secured Obligations.** Secured Obligations means all Obligations.

   F. **Payment in Full.** Payment in Full means the full and final payment in cash and performance of any and all Secured Obligations.

2. **RULES OF CONSTRUCTION.**

   A. **Multiple Debtors.** Each Person signing this Agreement as a "Debtor" shall be a Debtor hereunder and shall be liable with respect to the Secured Obligations on a joint and several basis with each other Debtor and each other Credit Party. Use of the singular "Debtor" shall mean and refer to each Debtor, singularly or collectively, as the context may require.

3. **GRANT OF SECURITY INTEREST.** To secure the full and final payment and performance of all Secured Obligations, Debtor hereby grants Lender a security interest in the Collateral. The security interest granted in this Agreement to Lender shall continue until the earlier to occur of termination of this Agreement in a writing signed by Lender and Payment in Full.

4. **WARRANTIES AND REPRESENTATIONS.** Debtor makes to Lender the following warranties and representations which will continue as long as this Agreement is in effect:

   A. **Power.** Each Debtor is organized, validly existing, qualified, and in good standing in each jurisdiction in which it operates. Each Debtor has the power and authority to execute and deliver this Agreement and to perform its obligations hereunder, including, without limitation, to grant Liens on its property as provided in this Agreement. Each Debtor has the power and authority to carry on its business and activities as they are now being conducted.

   B. **Authority.** The execution and delivery of this Agreement by each Debtor, as applicable, and each Debtor's performance of its obligations under this Agreement have been duly authorized by all requisite action, have received all necessary governmental approval, will not violate any provision of law or order of any court or government or authority, and will not violate any agreement to which such Debtor is a party or to which such Debtor or any of its property is subject.

5. **FINANCING STATEMENTS; FIXTURE FILINGS; ADDITIONAL FILINGS; POWER OF ATTORNEY.** Debtor authorizes Lender to file any financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens or other interests and amendments thereto relating to Debtor or the Collateral which Lender deems appropriate, in each case, in form and substance required by Lender, and to (a) describe the Collateral in the manner determined by Lender and (b) include therein all other information which is required or which Lender believes is required by the laws of any applicable jurisdiction (including Article 9 of the UCC as enacted in any jurisdiction) with respect to the preparation or filing thereof. Debtor appoints Lender as its attorney-in-fact to perform all acts which Lender deems appropriate to perfect and to continue perfection of the Lien granted to Lender under this Agreement or any Loan Document to which Debtor is a party, including, without limitation, (i) the filing of financing statements, fixture filings, notices under the Food Security Act, and other filings or public records or notices relating to the perfection or better perfection or protection of Liens and other interests and amendments thereto, (ii) the execution in Debtor's name of any agreements providing for control over any applicable Collateral, and (iii) the indorsement, presentation, and collection on behalf of Debtor and in Debtor's name of any checks, instruments, notes, or other documents, instruments, or agreements necessary or desirable to collect any amounts which Debtor may be owed, such power of attorney being coupled with an interest and is therefore irrevocable.

6. **FOOD SECURITY ACT.** From time to time upon Lender's request, Debtor hereby agrees to provide Lender in writing the names, addresses, and other requested information regarding all buyers, commission merchants, or selling agents to or through which Debtor may sell or otherwise dispose of its farm products and related assets. Debtor hereby authorizes Lender to notify all buyers, commission merchants, selling agents and others regarding Lender's Lien under this Agreement and the other Loan Documents; provided, however, that Lender shall have no obligation to provide or give such notice and

the failure to provide or give such notice shall not in any way constitute a waiver of any provision of any Loan Document.

7. **INTELLECTUAL PROPERTY.** Debtor grants Lender a non-exclusive license and right to use, without royalty or other charge, Debtor's intellectual and other property (including, without limitation, any licensed intellectual property, unless prohibited by the enforceable terms of such license) for purposes of advertising any Collateral for sale, collecting any accounts, disposing of or liquidating any Collateral, settling claims, or otherwise exercising any of its rights and remedies under the Loan Documents (including, without limitation, labels, patents, copyrights, trade secrets, trade names, trademarks, service marks, product line names, advertising materials, and any other property of a similar nature). Debtor's rights under all licenses and all franchise agreements shall inure to Lender's benefit. Debtor shall be liable for any and all expense incurred in connection with Lender's exercising its rights under this Agreement and the other Loan Documents to which Debtor is a party.

8. **ENTRY.** Debtor (for itself and on behalf of its affiliates) irrevocably consents to any act by Lender or its agents in entering upon any premises for the purposes of either (a) inspecting any Collateral or (b) taking possession of any Collateral. Debtor waives, as to Lender and its agents, any now existing or hereafter arising claim based upon trespass or any similar cause of action for entering upon any premises where Collateral may be located.

9. **OTHER RIGHTS.** Without limiting Debtor's obligations under the this Agreement and the other Loan Documents, Debtor authorizes Lender from time to time (a) to (i) take from any party and hold additional collateral or guaranty for the payment of the Secured Obligations or any part thereof, (ii) exchange, enforce, or release such collateral or guaranty or any part thereof, and (iii) release or substitute any indorser or guarantor or any party who has granted Lender any security interest in any property as security for the payment of the Secured Obligations or any part thereof or any party in any way obligated to pay the Secured Obligations or any part thereof, and (b) during the existence of any Event of Default, to direct the manner of the disposition of the Collateral and the enforcement of any indorsements, guaranties, letters of credit, or other security or Supporting Obligations relating to the Secured Obligations or any part thereof as Lender in its sole discretion may determine.

10. **ACCOUNTS; OTHER COLLATERAL.** Before or after an Event of Default, Lender may contact any Account Debtor or other Person obligated on any Collateral to (i) verify any instructions which may be given with respect to the payment of such Account, (ii) notify such Account Debtor or Person of the existence of Lender's Liens under the Loan Documents, and (iii) notify such Account Debtor or Person to make payment on Debtor's Accounts which constitute Collateral directly to Lender or in accordance with Lender's directions.

11. **WAIVER OF MARSHALING.** Debtor hereby waives any right it may have to require marshaling of its assets.

12. **CONTROL; FURTHER ASSURANCES.** Debtor will, at its expense, cooperate with Lender from time to time in (a) obtaining control of, or control agreements with respect to, Collateral for which control or a control agreement is required or is an available method for perfection of Lender's security interest under the UCC and (b) perfecting or better perfecting or protecting Lender's security interests in the Collateral by any one or more methods of perfection and protection requested by Lender. If any of the Collateral comprises chattel paper or instruments, Debtor will mark such chattel paper and instruments on the face thereof with a statement that such chattel paper and instrument is subject to Lender's security interest and, if requested by Lender, deliver such chattel paper and instruments to Lender's possession.

13. **AUTHORITY TO PERFORM.** Debtor authorizes Lender to do anything it deems necessary to protect the Collateral, including, without limitation:

   A. Pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral.

   B. Pay any rents or other charges under any lease affecting the Collateral.

   C. Order and pay for the repair, maintenance, and preservation of the Collateral.

   D. File any financing statements on Debtor's or Lender's behalf and pay for filing and recording fees pertaining to the Collateral.

   E. Place a note on any chattel paper indicating Lender's interest in the Collateral.

   F. Take any action Lender believes or deems necessary to realize on the Collateral, including, without limitation, performing any part of a contract or indorsing the same in Debtor's name.

   G. Handle in Debtor's or Lender's name, any suits or other proceedings involving the Collateral (including, without limitation, entering into any settlement or related agreements).

   H. Prepare, file, and sign Debtor's name to any necessary reports or accountings.

   I. Making entries in Debtor's books and records showing the existence of this Agreement and the other Loan Documents and the interests created herein or therein.

14. **REMEDIES.** During the existence of any Event of Default, Lender may, in its sole and absolute discretion, exercise any and all remedies it may have, whether arising under statute or rule, by contract, or in equity, whether against Debtor or any other Credit Party or the Collateral, all of which shall be cumulative and may be exercised singly or cumulatively, at one time or from time to time, including, without limitation:

   A. Lender may exercise any or all of the rights, powers, privileges and remedies granted to a secured party under the UCC or otherwise provided by law;

   B. Lender may contact all Persons obligated to a Debtor on or with respect to any Collateral and to instruct such Persons to deliver all Collateral directly to Lender;

   C. Lender may sell, lease, license or otherwise dispose of any or all Collateral;

   D. Lender may notify the United States Postal Service to change the address for delivery of mail of Debtor to any address

designated by Lender;

E. Without notice to or consent by any Debtor or other Credit Party, and without the obligation to pay rent or other compensation, Lender may (but shall not be obligated to) take exclusive possession of all locations where any Debtor conducts it business or has any rights of possession and use such locations and any of all of Debtor's equipment (or any equipment in which Debtor has any right to use) to continue growing any crops which constitute Collateral to fruition, harvest any crops which constitute Collateral, store, process, manufacture, sell, use, and liquidate or otherwise dispose of Collateral and, in so doing, use and consume at Debtor's sole cost and expense, any and all fertilizers, fuel, chemicals, seed, bags, and other farm products to undertake the same;

F. With regard to any deposit account which contains any Collateral or proceeds of any Collateral, Lender may instruct the bank maintaining such deposit account to pay the balance of such Deposit Account to Lender or take such other action as Lender shall instruct;

G. With regard to any securities account or commodity account which contains any Collateral or proceeds of any Collateral, Lender may instruct the securities intermediary maintaining such securities account or the commodity intermediary maintaining such commodity account, as applicable, to pay the balance of such securities account or such commodity account, as applicable, to Lender or take such other action as Lender shall instruct;

H. Without regard to the occurrence of waste or the adequacy of security, apply for the appointment of a receiver for any Debtor or for the assets of any Debtor and each Debtor waives any objection to such appointment or to the right to have a bond or security posted by Lender; and

I. Lender may apply the proceeds of Collateral to the Secured Obligations in whatever order Lender may determine.

15. **CERTAIN RESTRICTIONS.** While an Event of Default exists:

A. Each Debtor will deliver to Lender from time to time, as requested by Lender, current lists of all Collateral and the location of such Collateral;

B. No Debtor will dispose of any Collateral except on terms approved by Lender; and

C. At Lender's request, each Debtor will assemble and deliver all Collateral and books and records pertaining thereto to Lender at a reasonably convenient place designated by Lender or in accordance with Lender's instructions.

16. **KEEPER OF PROPERTY.** Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Agreement or any other Loan Document, by executory process, sequestration, attachment, or writ of fieri facias, or otherwise, Debtor hereby agrees that the court issuing such an order shall, if requested by the Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as keeper of the property as (provided in La. R. S. 9:5136 et. seq.), such a keeper shall be entitled to a reasonable compensation. Debtor agrees to pay the reasonable fees of such keeper, which compensation to the keeper shall also be secured by this agreement in the form of an additional advance as provided in this Agreement and the other Loan Documents.

17. **INDEMNIFICATION; REIMBURSEMENT OF EXPENSES.** Debtor agrees to defend, protect, indemnify, and hold harmless Lender and its affiliates and all of their respective officers, directors, employees, attorneys, consultants, and agents from and against any and all losses, damages, liabilities, obligations, penalties, fines, taxes, fees, costs, and expenses (including, without limitation, attorneys' fees, costs and expenses; fees, costs and expenses for investigations, experts, and advisors; all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to the Secured Obligations or any of the Loan Documents or the enforcement or protection of Lender's rights under the Loan Documents) incurred by or on behalf of such indemnitees, whether before or after the date of this Agreement, as a result of or arising from or in any way relating to the Loan Documents, the making of any Advance, the use of the proceeds of any Advance, or the transactions contemplated herein or in any other Loan Documents or the exercise of Lender's remedies hereunder or at law or in equity. Debtor's obligations under this section shall be part of the Secured Obligations, shall be secured by the Collateral, and shall be due and payable by Debtor ON DEMAND. Debtor' obligations under this section shall survive Payment in Full.

18. **APPLICABLE LAW; WAIVER OF JURY TRIAL. THE APPLICABLE LAW AND WAIVER OF JURY TRIAL PROVISIONS IN THE LOAN AGREEMENT ARE HEREBY INCORPORATED BY REFERENCE IN THIS AGREEMENT.**

19. **SUCCESSORS AND ASSIGNS; AGENTS.** This Agreement and each other Loan Document to which Debtor is a party shall be binding upon Debtor and Debtor's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Debtor may not assign any of its rights or obligations under this Agreement or the other Loan Documents. Lender may from time to time appoint one or more agents and subagents for purposes of perfecting on the Collateral and otherwise taking or accepting collateral assignments of rights otherwise stated to be granted to Lender hereunder or enforcing its rights hereunder. Each of such agents and subagents shall be entitled to the same rights of indemnification and reimbursement of fees, costs, and expenses which are otherwise available to Lender under this Agreement and the other Loan Documents, all without further consent or acknowledgment of, or notice to, Debtor or any other Credit Party.

20. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and signed by Debtor and Lender. This Agreement and the other Loan Documents are the complete and final expression of the agreement between Lender and Debtor regarding the subject matter hereof and thereof. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

21. **NOTICE.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and shall be effective upon receipt by the noticed party. Acceptable methods for giving notices hereunder

shall include first-class U.S. mail, hand-delivery, and nationally recognized commercial courier service. Regardless of the manner in which notice is provided, notices may be sent to the addresses for Lender and Debtor as set forth below the applicable party's signature to this Agreement or to such other address as any party may give to any of the others for such purpose in accordance with this Agreement.

22. **FURTHER ASSURANCES.** Debtor agrees to sign, deliver, and file any additional documents, agreements, instruments, or certifications that Lender may consider necessary or desirable to perfect, continue, and preserve the Secured Obligations and Lender's rights with respect to the Collateral and to effect the transactions contemplated herein and in the other Loan Documents.

23. **CONFIDENTIALITY.** Lender will endeavor to maintain the confidentiality of the information Lender or Lender's agents obtain with respect to Debtor, except that Lender may disclose such information (i) in any litigation, arbitration, or other proceeding involving any Credit Party, the Secured Obligations, or the Loan Documents; (ii) to any of Lender's affiliates; (iii) to any government or governmental or regulatory agency and any self-regulating authority; (iv) to Lender's accountants, auditors, counsel, and advisors; (v) to any of Lender's actual or prospective assignees or participants; (v) as may be required by court order or law, rule, or regulation; (vi) to the extent permitted or contemplated under any Loan Document; and (vii) to any other Person whom Lender reasonably believes to be a creditor of Debtor or any other Credit Party.

24. **NO WAIVER.** No failure or delay on the part of Lender to exercise any right under this Agreement or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

25. **SURVIVAL OF CERTAIN TERMS.** All representations and warranties made in this Agreement and the other Loan Documents shall survive the making of any Advance and the delivery of any other Loan Document and shall continue in full force and effect until Payment in Full.

26. **COUNTERPARTS; ELECTRONIC SIGNATURES.** This Agreement and any amendments, waivers, or consents relating hereto may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which, when taken together, shall constitute but one and the same instrument. Any signature delivered by a party hereto or to any amendment, waiver, or consent relating hereto by facsimile transmission or by electronic email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

27. **ADDITIONAL WAIVERS.** To the extent legally permitted, Debtor additionally waives:

    A. The benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

    B. The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

    C. The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

    D. All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

28. **EFFECT OF SIGNATURES.** By signing, Debtor agrees to the terms set forth in this Agreement and certifies that Debtor has received a copy of this Agreement and the other Loan Documents and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF,** Lender and each Debtor have executed and delivered this Agreement as of the date first above written:

**LENDER:**

**AGRIFUND, LLC**

**By:** _____

**Name:** Paul Baessler

**Title:** Area Manager

**Address for notices:**

420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102


Borrower:
Steven Lawrence Spence

Address for Notices:
Steven Lawrence Spence
13666 514th Ave                          By: _____
Vernon Center, MN  56090
                                         Steven Lawrence Spence


Borrower:
Theresa Ann Spence

Address for Notices:
Theresa Ann Spence
13666 514th Ave                          By: _____
Vernon Center, MN  56090
                                         Theresa Ann Spence

**EXHIBIT A**
**COLLATERAL**

FARM PRODUCTS (CROPS): Any and all of Debtor's present and future rights, title, and interest in and to now existing or hereafter arising farm products consisting of harvested or unharvested crops grown, to be grown, or growing on the "Specified Real Property."

"Specified Real Property" includes, but is not limited to, the real property identified as follows:
Minnesota: Blue Earth County FSN# 2082, 13147, 13394.

FARM PRODUCTS (RELATED PROPERTY): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products consisting of chemicals and fertilizers.

FARM PRODUCTS (SPECIFIED OTHER): Any and all of Debtor's present and future rights, title and interest in and to now existing or hereafter arising farm products described as follows:
    All Crops

INVENTORY: Any and all of Debtor's present and future rights, title and interest in all inventory of every type and description, whether now existing or hereafter arising or existing.

EQUIPMENT: Any and all of Debtor's present and future rights, title, and interest in and to all equipment of every type and description, whether now existing or hereafter arising or existing and together with all additions thereto and all substitutions or replacements therefor, and all accessories, attachments, and accessions thereto.

TOGETHER, IN ALL CASES, WITH EACH OF THE FOREGOING:

All rights to payment and payments made in respect of any of the foregoing;

All payments in kind, including without limitation PIK certificates and commodities redeemed or acquired by PIK certificates, in each case, in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

All rights under insurance policies of any kind or nature relating to, insuring, or otherwise covering any of the foregoing, including, without limitation, all rights to receive payments under any such insurance, whether such payments are made in respect of losses, refunds of premiums, or otherwise, in each case, whether now existing or hereafter arising;

All of Debtor's rights under, and payments due to or to become due to Debtor under, any and all federal or state laws, rules, regulations, or programs relating in any way to any of the foregoing, including, without limitation, all rights of payment for participation under or by or through the Commodity Credit Corporation, the Agricultural Conservation Program, the Cropland Conversion Program, the National Wool Act of 1954, the Wheat, Feed Grain, and Cotton Programs of the Agricultural Adjustment Act of 1938, in each case, whether now existing or hereafter arising;

All of Debtor's documents, documents of title, warehouse receipts, and bills of lading evidencing or relating to or issued in connection with any of the foregoing, in each case, whether now existing or hereafter arising;

#74453886_v2

All of Debtor's general intangibles in any way relating or pertaining to any of the foregoing, including, without limitation, Debtor's books, records, files, computer disks, and software relating in any way to the foregoing, and all rights that Debtor may have with regard thereto, in each case, whether now existing or hereafter arising;

All of Debtor's rights to payment in respect of any diversion and storage payments, seed payments, rebates, gin rebates, elevator rebates, and warehouse rebates; and

All of Debtor's accounts, general intangibles, payment intangibles, tangible chattel paper, electronic chattel paper, letter-of-credit rights, instruments, supporting obligations, documents, documents of title, warehouse receipts, bills of lading, inventory, equipment, farm products, and goods, in each case, constituting proceeds or products (manufactured or otherwise) of the foregoing or covering or relating to any of the foregoing, and all products and proceeds of the foregoing.

EXCLUDED PROPERTY:  Any of the foregoing to the contrary notwithstanding, the Collateral shall not include any of property described below:

a.   Farm products consisting in any respect of marijuana or any inventory consisting of marijuana (or any products manufactured from marijuana).

b.   Consumer goods.

c.   The following property (if any):

   None

DocuSign Envelope ID: 3125D866-8CED-4663-8A6C-2B9CC43D6224

# Commercial Loan Agreement

**DATE AND PARTIES.** This Commercial Loan Agreement is dated 3/12/2021_____ and is by and between or among AGRIFUND, LLC, a Delaware limited liability company ("**Lender**"), and
Steven Lawrence Spence and Theresa Ann Spence
_____
_____
_____

(each and all of such Persons as defined below, singularly and jointly and severally, "**Borrower**").

1. **DEFINITIONS AND RELATED TERMS.** In addition to other terms defined in this Agreement, the following terms have the following meanings:

   A. **Advance.** Advance means each extension of credit made or deemed made by Lender to Borrower hereunder.

   B. **Agreement.** Agreement means this Commercial Loan Agreement, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   C. **Application.** Application means each of the applications completed, executed, or delivered to Lender in connection with the transactions contemplated in this Agreement, including, without limitation, the Advances, in each case, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   D. **Business Day.** Business Day means any day on which banks located in the Jurisdiction are not closed or permitted to be closed.

   E. **Credit Party.** Credit Party means each Borrower and each other Person which has guaranteed all or a portion of the Obligations or granted Lender a Lien in and to any or all of its assets and properties to secure any of the Obligations, and, in each case, each of such Person's successors and assigns.

   F. **Collateral.** Collateral means any property, real, personal, or intangible, that secures or is intended to secure the Obligations.

   G. **Demand Note.** Demand Note means that certain Demand Promissory Note dated the date hereof, made by Borrower to order of Lender, as the same may be amended, restated, supplemented, or otherwise modified or replaced or substituted from time to time.

   H. **Food Security Act.** Food Security Act means the Food Security Act of 1985, as amended from time to time.

   I. **Insiders.** Insiders means those defined as insiders by the United States Bankruptcy Code, as amended, and, in any event, includes, without limitation, any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with Borrower.

   J. **Jurisdiction.** Jurisdiction means the State of Louisiana.

   K. **Lien.** Lien means any lien, security interest, pledge, hypothecation, adverse claim, or other encumbrance.

   L. **Loan Documents.** Loan Documents means this Agreement and all other documents, instruments, and agreements evidencing any Advance or executed or delivered by any Credit Party in connection with this Agreement or any Advance, including, without limitation, any Application, the Demand Note, any Security Document, any cross-collateralization agreement, and any guarantee or pledge agreement in respect of any or all of the Obligations or any Collateral or otherwise, in each case, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

   M. **Loan Origination Fee.** Loan Origination Fee means a fee in the amount of $ 3,551.00_____.

   N. **Maturity Date.** Maturity Date means the "Maturity Date" as set forth in the Demand Note.

   O. **Obligations.** Obligations means any and all indebtedness, obligations, and liabilities of any kind or nature, whether now existing or hereafter arising, of Borrower to Lender, including without limitation, (I) all indebtedness, obligations, and liabilities arising under the Loan Documents; (ii) all other indebtedness, obligations, and liabilities arising under or in connection with any other transaction or arrangements between Borrower and Lender; (iii) any and all costs, expenses, fees, and other charges incurred from time to time by or on behalf of Lender or its affiliates in connection with the negotiation, execution and delivery, making, administering, maintaining, collecting, or enforcing any or all of the foregoing, in each of the foregoing cases, whether absolute or contingent, liquidated, voluntary or involuntary, determined or undetermined, due or to become due, and whether otherwise secured or unsecured, and whether Borrower is obligated alone or with other Person on a joint, several or solidary basis, as a principal obligor or as a surety, and whether or not any or all of the foregoing may be barred under any statute of limitations or prescriptive period, allowed or not allowed in any bankruptcy proceeding, or may be or become otherwise unenforceable or voidable for any reason whatsoever. Without limiting the generality of the foregoing, the term "Obligations" shall also include all debts, liabilities and obligations incurred by Borrower to Lender in any insolvency proceeding of Borrower or its estate and any interest, fees or other charges accrued in any such insolvency proceeding, whether or not any such interest, fees or other charges are recoverable from Borrower or its estate under 11 U.S.C. § 506.

   P. **Payment in Full.** Payment in Full means the full and final payment in cash and performance of any and all Obligations.

   Q. **Permitted Liens.** Permitted Liens means all Liens on any of the Collateral (I) which are in favor of Lender; (ii) which are nonconsensual and arise by law in the ordinary course of business for obligations which are not overdue or which are being contested in good faith by appropriate proceedings being pursued diligently and for which Borrower has implemented adequate reserves; (iii) which constitute valid purchase money security interests attaching only to the fixed or capital property purchased or improved with such purchase money; (iv) which are disclosed on the Application; (v) which are shown in the financial statements delivered to Lender as part of the application process and before the

first Advance is made hereunder; and (vi) to which Lender shall have consented in writing.

R. **Person.** Person means any individual, corporation, limited liability company, partnership, trust, governmental entity or authority, association, or other entity.

S. **Security Documents.** Means any and all security agreements, pledge agreements, mortgages, deeds of trust, and other documents, agreements, and instruments creating or intending to create any security interest, mortgage, pledge, hypothecation, or lien in and on any Credit Party's Property as collateral security for any or all of the Obligations, in each case, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

T. **Servicing Fee.** Servicing Fee means a fee in the amount of $ 4,143.00           .

U. **Stated Principal Amount.** Stated Principal Amount has the meaning given such term in the Demand Note.

V. **UCC.** UCC means the Uniform Commercial Code as enacted in the Jurisdiction or in any other applicable jurisdiction.

W. **Additional UCC Terms.** Any term used in this Agreement or in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or in any other Loan Document shall have the meaning given to the term in the UCC, including, without limitation, Accession, Account Debtor, Chattel Paper, Account, Commercial Tort Claim, Deposit Account, Document, Electronic Chattel Paper, Equipment, Fixture, Instrument, Inventory, Investment Property, Letter-of-Credit Right, Proceeds, Supporting Obligation, and Tangible Chattel Paper.

2. **RULES OF CONSTRUCTION.**

A. **Multiple Borrowers.** Each Person signing this Agreement as a "Borrower" shall be a Borrower hereunder and shall be liable with respect to the Obligations on a joint and several basis with each other Borrower and each other Credit Party. Use of the singular "Borrower" shall mean and refer to each Borrower, singularly or collectively, as the context may require.

3. **ADVANCES.** Advances under this Agreement are made according to the following terms and conditions:

A. **DISCRETIONARY ADVANCES. ANY OTHER TERM OR CONDITION OF THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT TO THE CONTRARY NOTWITHSTANDING, LENDER HAS NO OBLIGATION TO MAKE ANY ADVANCE TO BORROWER AND THE MAKING OF EACH ADVANCE BY LENDER TO BORROWER IS AT LENDER'S DISCRETION. CONDITIONS PRECEDENT TO THE MAKING OF AN ADVANCE ARE INCLUDED IN THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS FOR THE SOLE PURPOSE OF ASSISTING LENDER IN DETERMINING WHETHER IT WILL MAKE AN ADVANCE AND BORROWER MAY NOT INFER THAT ANY ADVANCE WILL BE MADE SOLELY BECAUSE THE STATED CONDITIONS PRECEDENT TO THE MAKING OF SUCH ADVANCE HAVE BEEN SATISFIED.**

B. **Making Advances.** Subject to the terms and conditions set forth in this Agreement and the other Loan Documents, Lender may make the Loan to Borrower in one or more Advances; provided, however, that (I) Lender shall be under no obligation to make any Advance and (ii) unless Lender otherwise agrees, the aggregate original principal amount of all Advances made hereunder will not exceed the Stated Principal Amount.

C. **Method of Making Advances.** Advances will be made in any manner and at such times as are requested by Borrower and acceptable to Lender from time to time.

D. **Reliance on Advance Requests.** Lender may make an Advance based on any request which Lender believes to be made by or on behalf of Borrower. Lender has no duty to inquire as to the identity of any Person making any request for an Advance hereunder. Borrower will indemnify Lender and hold Lender harmless for Lender's reliance on any request for an Advance that Lender believes to be genuine and any such Advance shall constitute part of the Obligations.

E. **Records.** Lender's records shall be conclusive evidence as to the outstanding principal amount of all Advances and all interest accrued thereon.

F. **Conditions Precedent.** Lender shall have no obligation to make any advance to Borrower unless each of the following conditions shall have been satisfied (as determined by Lender in its sole discretion):

(1) Discretion. Lender shall have elected to make such Advance, in its sole and absolute discretion.

(2) No Event of Default. Each Credit Party shall be in compliance with all terms and conditions of this Agreement and the other Loan Documents and no Event of Default shall have occurred and be continuing at the time such Advance is requested or made and no Event of Default shall occur or result from the making of such Advance.

(3) Information and Loan Documents. Each Credit Party shall have executed and/or delivered to Lender all documents, information, certifications and warranties as Lender may require in connection with such Advance, all properly executed and delivered, as applicable, and each in form and substance satisfactory to Lender.

(4) Advance Request. Borrower (or someone acting on Borrower's behalf) shall have requested such Advance using such method and in such format as may be approved by Lender from time to time.

(5) Warranties and Representations. All warranties and representations contained in this Agreement and the other Loan Documents shall be true and correct at the time such Advance is requested and made.

Each of Borrower's requests for an Advance constitutes a representation and warranty that no Event of Default exists under this Agreement or the other Loan Documents and that all conditions precedent to the making of such Advance have been satisfied. The making of any Advance, even if one or more conditions precedent are not satisfied with respect to such Advance, shall not constitute any waiver on the part of Lender to require that all conditions precedent be satisfied with respect to any other Advance.

4. **DEMAND. BORROWER ACKNOWLEDGES AND AGREES THAT THE ADVANCES MADE PURSUANT TO THE LOAN DOCUMENTS AND ALL OTHER OBLIGATIONS ARE DUE AND PAYABLE ON DEMAND AND THAT LENDER MAY MAKE DEMAND FOR PAYMENT OF SUCH OBLIGATIONS AT ANY TIME, WITH OR WITHOUT THE OCCURRENCE**

**OF ANY OTHER FACT, CIRCUMSTANCE, OR CONTINGENCY AND FOR ANY REASON. BORROWER AGREES TO PAY ALL OBLIGATIONS ON THE EARLIER TO OCCUR OF (A) THE DATE ON WHICH LENDER DEMANDS PAYMENT AND (B) THE MATURITY DATE.**

5. **CERTAIN FEES.** As consideration for Lender's agreement to make Advances on the terms and conditions set forth herein, Borrower agrees to pay Lender the Loan Origination Fee and the Servicing Fee. Such fees shall be due and payable on the date on which the first Advance is made under this Agreement. Borrower authorizes and directs Lender to make an Advance hereunder and to apply the proceeds of such Advance to the payment of the Loan Origination Fee and the Servicing Fee, each of which, once paid, shall be non-refundable, in whole or in part.

6. **WARRANTIES AND REPRESENTATIONS.** Borrower makes to Lender each of the following warranties and representations which will continue until Payment in Full.

   A. **Power.** Each Credit Party is organized, validly existing, qualified, and in good standing in each jurisdiction in which it operates. Each Credit Party has the power and authority to execute and deliver the Loan Documents to which it is a party and to perform its obligations thereunder. Each Credit Party has the power and authority to carry on its business and activities as they are now being conducted.

   B. **Authority.** The execution and delivery of this Agreement and the other Loan Documents by each Credit Party, as applicable, and each Credit Party's performance of its obligations under this Agreement and the other Loan Documents to which it is a party, have been duly authorized by all requisite action, have received all necessary governmental approval, will not violate any provision of law or order of any court or government or authority, and will not violate any agreement to which such Credit Party is a party or to which such Credit Party or any of its property is subject.

   C. **Name and Place of Business.** Other than previously disclosed in writing to Lender, no Credit Party has changed its name or principal place of business within the last five years and has not used any trade or fictitious name other than its true legal name. Without Lender's prior written consent, Borrower will not use any trade or fictitious name and will preserve its existing legal name and franchises.

   D. **Environmental Laws.** Each Credit Party is in full compliance with all environmental and related laws, rules, and regulations. Borrower does not know and has no reason to know that any hazardous substance or materials have been discharged, leached or disposed of, in violation of any environmental law. Borrower has no knowledge or reason to believe that there is any investigation, claim, judgment or order, violation, Lien, or other notice under any environmental law which is pending or threatened and that concerns any Credit Party or any property owned or operated by any Credit Party.

   E. **Application.** All information and statements made in any Application relating to this Agreement or the Advances made hereunder where true and complete in all material respects on the date on which such Application was delivered to Lender. Borrower's operations and activities comport in all respects with the information Borrower provided on the Application with respect to the intended acres, intended harvest use, crop mix, and crop insurance type and levels, except to the extent otherwise agreed in writing by Lender.

   F. **No Other Liens.** Borrower owns or leases all property that it needs to conduct its business and activities. Borrower has good and marketable title to all property that it purports to own and a valid leasehold interest in all property it purports to lease. All of Borrower's Property is free and clear of all Liens other than Permitted Liens.

   G. **Compliance With Laws.** No Credit Party is in violation of any laws, regulations, rules, orders, judgments or decrees applicable to such Credit Party or any of its property, except for those which such Credit Party is challenging in good faith through proper proceedings and after providing adequate reserves to fully pay any such claim and its challenge should such matter be resolved against such Credit Party.

   H. **Legal Dispute.** There are no pending or threatened law suits, arbitrations or other proceedings against any Credit Party or any of its property that relate to the transactions contemplated in the Loan Documents or that, singly or together, may materially and adversely affect such Credit Party's property, operations, financial condition, or business.

   I. **Adverse Agreements.** No Credit Party is a party to, nor is any Credit Party bound by, any agreement that is now or is likely to become materially adverse to such Credit Party's property, operations, financial condition, or business.

   J. **Other Claims.** Each Credit Party's execution and delivery of, and its performance of its obligations under, the Loan Documents to which it is a party do not conflict with the terms of any other agreement, order, judgment, or decree to which such Credit Party is a party or by or to which any of its property is subject or bound and will not result in any Lien on such Credit Party or any of its property other than Permitted Liens.

   K. **Certification.** Each and every financial statement that any Credit Party provides Lender fairly represents such Credit Party's financial condition for the periods stated in such statement, is current, complete, true and accurate in all material respects, includes all of such Credit Party's direct and contingent liabilities and there has been no material adverse change in such Credit Party's financial condition, operations or business since the date of such financial statement. All information provided to Lender by any Credit Party shall be true and accurate in all respects when provided, when considered in the light of the reason for which such information was provided.

7. **FINANCIAL STATEMENTS AND INFORMATION.** Borrower agrees to:

   A. Prepare and maintain financial records using accounting principles and methods consistently applied;

   B. Promptly (and, in any event, within three Business Days after Lender's request therefor) provide Lender with any and all other information about each Credit Party's operations, financial affairs, and condition which Lender may request from time to time, in each case, in such form as Lender may require from time to time.

8. **COVENANTS.** Until Payment in Full, Borrower will comply with the following terms (except to the extent waived in writing by Lender):

   A. **Inspection, Information, and Appraisals.**

(1) Upon reasonable notice (or if any Event of Default exists, without prior notice), Borrower will permit Lender or Lender's agents to enter any of my premises and any location where any Collateral is located to Lender may inspect any and all Collateral and inspect, audit, check, review and copy Borrower's books, records, journals, orders, receipts, and correspondence and any and all other business related data and information.

(2) Lender may discuss Borrower's affairs, finances and business with any Person which provides Lender with any evidence that such Person is a creditor of a Credit Party and any Person which Lender believes to be a creditor of Borrower.

(3) Lender (or its agents or representatives) may from time to time, with or without notice to Borrower inspect, audit, examine, appraise, or evaluate any and all of Borrower's assets and properties (real or personal) and do all other things which Lender believes is necessary or desirable to preserve and protect any of such assets or properties and Lender's interest therein.

(4) Borrower agrees to promptly (and, in any event, within three Business Days after Lender's request therefor) provide any and all information relating to Borrower, its business, its financial condition, and the Collateral as Lender may request from time to time.

(5) Lender may discuss Borrower's financial condition and business operations with each Credit Party and Borrower's independent accountants, auditors, and advisors, if any, and each Credit Party's officers, managers, directors, and members without further consent from any other Credit Party. Until Payment in Full, Borrower shall, and shall cause each Credit Party to, direct all of its accountants and auditors to permit Lender to examine such Credit Party's records in their possession and to make copies of such records, all without further consent from any Credit Party.

(6) Promptly upon (but, in any event, within three Business Days after) Lender's request therefor, Borrower shall cause a responsible officer, member, or manager or its independent accountant to provide Lender with a written certification that to the best of such Person's knowledge no Event of Default exists and that there exists no other action, condition or event which, with the giving of notice or lapse of time or both, would constitute an Event of Default.

(7) Lender may from time to time obtain one or more appraisals of the Collateral and all costs and expenses thereof shall constitute an Advance for all purposes under this Agreement and the other Loan Documents.

**B. Maintenance and Continuation of Business.** Borrower will preserve and maintain its present existence and good standing in the jurisdiction where Borrower is organized and all of Borrower's rights, privileges and franchises. Borrower will do all that is needed or required to continue its business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere Borrower engages in business or activities or owns, leases or locates its property. Borrower will obtain Lender's prior written consent before Borrower ceases its business or before Borrower engages in any new line of business that is materially different from Borrower's present business. Borrower shall actively pursue and conduct its business of farming, agricultural, and related businesses until Payment in Full.

**C. Compliance with Laws.** Borrower will not violate any laws, regulations, rules, orders, judgments or decrees applicable to Borrower or by which Borrower or any of its property is bound, except for those which Borrower is challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should such matter be decided against Borrower. From time to time, Borrower shall provide Lender with written evidence that Borrower has fully and timely paid all of its taxes, assessments and other governmental charges (including, without limitation, sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes) levied or imposed on Borrower or its property. Borrower will adequately provide for the payment of such taxes, assessments and charges that have accrued but are not yet due and payable.

**D. Fundamental Changes; Dispositions.** After the date of this Agreement and until Payment in Full, (I) Borrower will not merge, consolidate, or amalgamate with any other Person; (ii) Borrower will not acquire all or substantially all of the assets of any other Person or any line or division of any other Person; (iii) Borrower will not form or acquire any subsidiary or acquire through any means any or all of the debt or equity interests issued by any other Person; and (iv) Borrower will not sell, lease, transfer, or otherwise dispose of any of its property, except for the sale of worn out and obsolete equipment no longer used or useful to the conduct of Borrower's business and the sale of inventory in the ordinary course of business (but subject to all other terms of the Loan Documents).

**E. Dealings with Insiders.** Borrower will not purchase, acquire, or lease any property or services from, or sell, provide or lease any property or services to, or borrower money from, or loan money to, or otherwise deal with, any of its officers, directors, shareholders, members, partners, or affiliates except as required under contracts which existed at the time Borrower submitted the Application and which were approved by Lender or as this Agreement otherwise permits. Borrower will not permit any of such contracts to be amended, in whole or in party, without Lender's prior written consent.

**F. Other Liabilities and Guarantees.** Borrower will not incur, assume or permit any debt for borrowed money or debt evidenced by notes, bonds or similar obligations, except (I) debt in existence on the date of this Agreement and fully disclosed in writing to Lender; (ii) debt subordinated in payment to Lender on conditions and terms acceptable to Lender; accounts payable incurred in the ordinary course of my business and paid under customary trade terms; and (iii) the Obligations. Borrower will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments submitted for collection in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other Person other than in favor of Lender or as Lender otherwise specifically agrees in writing.

**G. Notices.** Borrower will promptly (and, in any event, within three Business Days after obtaining knowledge thereof) notify Lender of (I) any material change in any Credit Party's financial condition; (ii) the occurrence of any default or

event of default under any debt owed by any Credit Party to any other Person; (iii) the occurrence of any Event of Default and Borrower's intentions in dealing with such Event of Default; (iv) the commencement or threatened commencement of any litigation, investigation, or proceeding against any Credit Party; (v) any damage to any Collateral; (vi) any notices from any insurance providers, agents, or underwriters relating in any way to any Collateral; (vii) any change (of any extent or nature) in the types of crops, acreage, irrigation, crop mix, or harvested use from those items as set forth in the Application; and (viii) any other fact or circumstance concerning any Credit Party which may adversely affect such Credit Party's property, operations, financial condition or business or its ability to perform its obligations under any Loan Document to which it is a party.

**H.** **List of Purchasers, Commission Merchants, and Others.** Borrower will furnish Lender with a current and accurate list of any and all potential or intended purchasers, commission merchants, selling agents, brokers, dealers and any other Persons to or through which Borrower may sell or otherwise dispose of all or any part of the Collateral, including, the full name, current mailing and business address and telephone numbers of such persons or entities. Borrower shall provide such lists to Lender by certified mail, to be received by Lender no later than the earlier to occur of the date which is five Business Days after the date of this Agreement and 180 calendar days before any such sale or other disposition of the Collateral, and Borrower will sell or arrange for the sale of or otherwise dispose of or arrange for the disposition of any of the Collateral, or enter into any contracts in respect thereof, with any Person as to which Borrower has not complied with the notice provisions of this paragraph. Borrower will not store or arrange for the storage of, or enter into any contracts for the storage of, any Collateral with any Person other than Borrower, unless Borrower has first provided notice thereof to Lender. If any of the Collateral is located or placed in a warehouse, elevator, or similar facility, Borrower shall immediately deliver to Lender any and all warehouse receipts and other documents evidencing ownership of such Collateral, whether the same may be issued in negotiable or non-negotiable form. No purchaser of the Collateral or any cooperative marketing association, warehouseman or purchaser of warehouse receipts will ever be deemed to be the agent of Lender. No payment made to Borrower by any purchaser, cooperative marketing association, or purchaser of warehouse receipts will ever be construed to be payment to Lender or to operate as a release of Lender's security interest under the Loan Documents, except to the extent such payment is actually made to Lender and applied to reduce the Obligations.

**I.** **Use of Proceeds.** Borrower will use the proceeds of Advances only for planting, producing, and harvesting crops and items and matters directly related thereto. Borrower will not use any of the proceeds of any Advance to plant, grow, harvest, store, process, manufacture, or sell any crop consisting of marijuana or any product derived from marijuana. Borrower shall not permit the proceeds of any Advance to be used directly or indirectly to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise permit the proceeds of any Advance in violation of Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended, or to pay the principal or interest of any other indebtedness. Borrower agrees that it shall use the proceeds of the Advances only in direct furtherance of its business as provided herein and shall not use any of the proceeds of any Advance for personal, family, or household purposes.

**J.** **No Other Liens.** Borrower will not create, permit or suffer to exist any Lien on any of the Collateral other than Permitted Liens.

**K.** **Restricted Payments.** Borrower will not make any dividends or distributions to its equityholders, or redeem, retire, purchase or otherwise acquire, directly or indirectly, any of its equity interests.

**L.** **Insurance.** Until Payment in Full, Borrower shall, at its sole cost, keep the Collateral and all of its other property insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance where applicable) as may be required by Lender. Insurance on Borrower's crops and farm products (and inventory to the extent applicable) shall be in an amount not less than the anticipated market value of such commodities or such other amount or amounts as Lender may approve in writing. Insurance on other Collateral shall be in an amount not less than the full replacement value of the Collateral, or such other amount or amounts as Lender may require or approve in writing. Borrower shall further provide and maintain, at its sole cost and expense, comprehensive public liability insurance, naming both Borrower and Lender as parties insured, protecting against claims for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation and condition of the Collateral and the property on which the Collateral is located and further containing a broad form contractual liability endorsement covering Borrower's obligations to indemnify Lender as provided hereunder. In addition, Borrower shall obtain, at its expense, such federal or state crop insurance as may be required by Lender. Borrower may purchase such insurance from any insurance company or broker that is reasonably acceptable to Lender. All insurance policies, including renewals and replacements, must also be in form and substance acceptable to Lender and must additionally contain a lender's loss payable or other endorsement in favor of Lender, providing in part that (I) all proceeds and returned premiums under such policies of insurance will be paid directly to Lender or its assignees and (ii) no act or omission on the part of Borrower, or any of its officers, agents employees, or representatives, nor breach of any warranty contained in such policies, shall affect the obligations of the insurer to pay the full amount of any loss to Lender. Such policies of insurance must also contain a provision prohibiting cancellation or the alteration of such insurance without at least 30 days prior written notice to Lender of such intended cancellation or alteration. Borrower agrees to provide Lender with originals or certified copies of such policies of Insurance. Borrower further agrees to promptly furnish Lender with copies of all renewal notices and, if requested by Lender, with copies of receipts for paid premiums. Borrower shall provide Lender with originals or certified copies of all renewal or replacement policies of insurance no later than 15 days before any such existing policy or policies should expire. If Borrower's insurance policies and renewals are held by another person, Borrower agrees to supply original or certified copies of the same to Lender within the time periods required above. Borrower agrees to immediately notify Lender in writing of any material casualty to or accident involving the Collateral, whether or not such casualty or loss is covered by insurance. Borrower further agrees to promptly notify Borrower's insurance company and to submit an appropriate claim and proof of loss to the insurance company if any Collateral is lost, damaged, or destroyed as a result of an insured hazard. Lender may

submit such a claim and proof of claim to the insurance company on Borrower's behalf, should Borrower fail to do so promptly for any reason. Borrower hereby irrevocably appoints Lender as its agent and attorney-in-fact, such agency being coupled with an interest, to make, settle and adjust claims under such policy or policies of insurance and to endorse the name of Borrower on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more events of default exist under this Agreement, Lender will not settle or adjust any such claim without the prior approval of Borrower (which approval shall not be unreasonably withheld). Lender shall have the right to directly receive the proceeds of all insurance protecting the Collateral and shall have the right to assign any such right to another Person, and so on. If Borrower should receive any such insurance proceeds, Borrower agrees to immediately hold such insurance proceeds in trust for the benefit of Lender or its assignees and to immediately turn over and to pay such proceeds directly to Lender or its designee or assignee. All such insurance proceeds may be applied, at Lender's sole option and discretion, in such manner as Lender determines (after payment of all reasonable costs, expenses and attorney's fees necessarily paid or fees necessarily paid or incurred by Lender in this connection) for the purpose of (I) repairing or restoring the lost, damaged or destroyed Collateral or (ii) reducing the then outstanding balance of the Obligations in whatever order Lender may determine. Lender's (or its designee's or assignee's) receipt of such insurance proceeds and the applications of such proceeds as provided herein shall not, however, affect Lender's Liens on the Collateral. Nothing under this section shall be deemed to excuse Borrower from its obligations to promptly repair, replace, or restore any lost or damaged Collateral, whether or not the same may be covered by insurance, whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Lender. Furthermore, unless otherwise confirmed by Lender in writing, the application or release of any insurance proceeds by Lender (or its designee or assignee) shall not be deemed to cure or waive any Event of Default. Any proceeds which have not been disbursed within six months after their receipt and which Borrower has not committed to the repair or restoration of Collateral shall be used to repay the Indebtedness. Any and all awards or damages received by Borrower from any governmental authority covering any of the Collateral shall further be paid to Lender and applied to the outstanding Obligations in whatever order Lender may determine. Should Borrower for any reason fail to maintain insurance on the Collateral as required under this Agreement, then Lender shall have the right again at Lender's sole option and discretion and without any responsibility or liability to do so, to purchase such insurance on Borrower's behalf, including without limitation, the right to purchase insurance protecting only Lender's rights and interests in the Collateral, and the costs of doing so shall constitute an Advance for all purposes of this Agreement and the other Loan Documents.

**M. Property Maintenance.** Borrower will keep all tangible and intangible property that is necessary or useful to the conduct of its business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**N. Farming Practices; Crop Mix, Acreage, Etc.** Borrower shall not conduct its farming operations and business in any manner which could reasonably be expected to void any policy of insurance relating to any of the Collateral or provide any provider of such insurance any defense to paying any claim under such insurance. Borrower agrees to conduct its farming operations and business in a manner consistent with all requirements relating to any applicable state, local, or federal crop insurance program. Borrower will plant, grow, and harvest the crops in a manner that wholly comports with the information provided by Borrower in the Application, including, without limitation, the types of crops, crop mix, the acreage of each type of crop, the location of each type of crop, whether such crops are to be irrigated or not, and the intended harvest use of such crops.

**O. Restriction on Date of Sale of Certain Collateral.** Without Lender's prior written consent, Borrower will not enter into a sales contract or other contract for the disposition of any of its crops which constitute or intended to constitute Collateral if the date of sale provided for therein is after the Maturity Date.

**P. Deemed and Additional Advances.** In addition to any other Advances made or deemed made under this Agreement or any other Loan Document, Borrower agrees that (I) if any Obligations are not paid when the same become due and payable, Lender may make a deemed Advance to pay such Obligations; (ii) if Borrower for any reason fails to pay taxes, assessments, or other governmental charges when due, or if Borrower fails to repair, maintain, tend, irrigate, cultivate, or harvest the Collateral as required under this Agreement or the other Loan Documents, then Lender shall have the right, at Lender's sole option and without responsibility to do so, to make one or more Advances to remedy the same; (iii) if any Credit Party defaults under any other loan or extension of credit secured by the Collateral, or if any of the Collateral becomes subject to or threatened with seizure or sale, then Lender shall have the additional right, at Lender's sole option and discretion and without any responsibility to do so, to cure such defaults or to cause such defaults to be cured, whether by making payments on such Credit Party's behalf or by taking such other actions as Lender deems necessary within its sole discretion and all payments, fees, costs, and expenses incurred or paid by Lender shall constitute an Advance. All Advances made or deemed made under this paragraph shall constitute an Advance for all purposes under this Agreement and the other Loan Documents.

**Q. Credit Reports.** Borrower authorizes Lender (and any of its agents and representatives) to obtain, from time to time until Payment in Full, Borrower's personal and business credit profile or credit report (or similar report) from any one or more national or regional credit bureaus and Borrower ratifies and approves any actions taken by Lender before the date hereof in obtaining such.

**9. EVENTS OF DEFAULT. BORROWER ACKNOWLEDGES AND AGREES THAT THE OBLIGATIONS ARE DUE AND PAYABLE ON DEMAND. THE FOLLOWING EVENTS OF DEFAULT ARE INCLUDED SOLELY FOR THE PURPOSES OF AIDING LENDER IN THE ADMINISTRATION OF THE TRANSACTIONS CONTEMPLATED HEREIN AND DO NOT CONSTITUTE ANY ACTUAL OR IMPLIED PROMISE ON THE PART OF LENDER THAT PAYMENT OF THE OBLIGATIONS WILL NOT BE DEMANDED, EVEN IF NO EVENT OF DEFAULT EXISTS.** Each of the following shall constitute an "Event of Default":

**A. Payments.** Any Credit Party shall fail to make any payment of any Obligation when the same shall become due and

payable.

B. **Insolvency or Bankruptcy.** Any Credit Party shall die or be declared incompetent; dissolve; become insolvent; cease conducting a material portion of its business; take any action in furtherance of the appointment of any receiver or have any receiver appointed with or without its consent; take any action in furtherance of making application under or commencing any proceeding any debtor relief, bankruptcy, or insolvency law; take any action in furtherance of any assignment for the benefit of its creditors; or have filed against it any involuntary proceeding under any bankruptcy law.

C. **Change in Ownership.** After the date of this Agreement, there shall be any change in the ownership of the Borrower (in terms of the identity of each of Borrower's equity holders and the percentages of such equity interests owned by each such holder).

D. **Failure to Perform.** Any Credit Party shall fail to perform any covenant or agreement set forth in any Loan Document.

E. **Other Loan Documents.** Any party to any other Loan Document (other than Lender) shall be in default of its obligations or covenants thereunder.

F. **Other Agreements.** Any Credit Party shall be in default of its obligations or covenants under any other document, instrument, or agreement with Lender. Any Credit Party shall fail to pay any other debt it may owe when the same shall have become due and payable.

G. **Misrepresentation.** Any representation or warranty made by any Credit Party in any Loan Document shall be untrue or inaccurate in any material respect or shall conceal a material fact, in each case, at the time when such representation and warranty is made or deemed made.

H. **Judgment.** Any judgment, fine, or penalty shall be assessed or entered against any Credit Party in an amount in excess of $5000.

I. **Forfeiture.** Any Collateral or other property of Borrower is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Property Value.** Lender determines in good faith that the value of the Collateral has declined or is impaired.

K. **Insecurity.** There shall occur after the date of this Agreement any fact or circumstance relating to any Credit Party which Lender believes, in good faith, is likely to have a material adverse effect on the business or financial condition of such Credit Party, the ability of such Credit Party to perform its obligations under the Loan Documents to which it is a party, the likelihood of Lender's ability to be repaid under the Loan Documents, or the value of the Collateral.

L. **Revocation of Any Guaranty.** Any Credit Party shall assert that this Agreement or any other Loan Document (including, without limitation, any guaranty of all or any portion of the Obligations) that it is no longer bound by such Loan Document or is not enforceable against such Person or any guarantor shall revoke or attempt to revoke any guaranty agreement.

M. **Inaccuracy in Application.** Borrower's operations and activities at any time fail, for any reason, to comport in all respects with the information Borrower provided on the Application with respect to the intended acres, intended harvest use, crop mix, and crop insurance type and levels.

10. **REMEDIES.** During the existence of any Event of Default, Lender may, in its sole and absolute discretion, exercise any and all remedies it may have, whether arising under statute or rule, by contract, or in equity, whether against Borrower or any other Credit Party or the Collateral, all of which shall be cumulative and may be exercised singly or cumulatively, at one time or from time to time, including, without limitation:

A. **Acceleration.** Lender may declare all or any part of the Obligations Loan to be immediately due and payable, in which case, such Obligations shall be immediately due and payable; provided, however, that the Obligations shall automatically become immediately due and payable upon the occurrence of any Event of Default arising because of the commencement of any insolvency, bankruptcy, receivership, or similar proceeding.

B. **Insurance Benefits.** Lender may make a claim for any and all insurance benefits or refunds that may be available to any Credit Party.

C. **Termination.** Lender may terminate Borrower's rights to obtain advances or other extensions of credit by any of the methods provided in this Agreement.

D. **Set-Off.** To satisfy any or all of the Obligations, Lender may set-off against any amounts Lender may owe to Borrower.

E. **Other Loan Documents.** Exercise any or all of the remedies set forth in any other Loan Document.

11. **INDEMNIFICATION; REIMBURSEMENT OF EXPENSES.** Borrower agrees to defend, protect, indemnify, and hold harmless Lender and its affiliates and all of their respective officers, directors, employees, attorneys, consultants, and agents from and against any and all losses, damages, liabilities, obligations, penalties, fines, taxes, fees, costs, and expenses (including, without limitation, attorneys' fees, costs and expenses; fees, costs and expenses for investigations, experts, and advisors; all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to the Obligations or any of the Loan Documents or the enforcement or protection of Lender's rights under the Loan Documents) incurred by or on behalf of such indemnitees, whether before or after the date of this Agreement, as a result of or arising from or in any way relating to the Loan Documents, the making of any Advance, the use of the proceeds of any Advance, or the transactions contemplated herein or in any other Loan Documents or the exercise of Lender's remedies hereunder or at law or in equity. Borrower's obligations under this section shall survive Payment in Full.

12. **APPLICABLE LAW; WAIVER OF JURY TRIAL. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE DEEMED CONTRACTS MADE UNDER THE LAWS OF THE JURISDICTION AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE JURISDICTION (EXCLUDING ITS CONFLICT OF LAWS PROVISIONS IF SUCH PROVISIONS WOULD REQUIRE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION)**

DocuSign Envelope ID: 3125D866-8CED-4663-8A6C-2B9CC43D6224

EXCEPT INSOFAR AS (A) THE LAWS OF ANOTHER JURISDICTION MAY, BY REASON OF MANDATORY PROVISIONS OF LAW, GOVERN THE PERFECTION, PRIORITY, OR ENFORCEMENT OF SECURITY INTERESTS IN THE COLLATERAL OR (B) THE TERMS OF SUCH LOAN DOCUMENT EXPRESSLY STATE THAT THE LAW OF A DIFFERENT JURISDICTION SHALL GOVERN. ALL ACTIONS, SUITS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY HEREUNDER MAY, AT THE OPTION OF LENDER, BE LITIGATED IN COURTS LOCATED WITHIN THE JURISDICTION, AND BORROWER HEREBY EXPRESSLY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE JURISDICTION AND AGREES THAT ANY SERVICE OF PROCESS IN SUCH ACTION OR PROCEEDINGS MAY BE MADE BY PERSONAL SERVICE UPON BORROWER WHEREVER BORROWER MAY BE THEN LOCATED, OR BY CERTIFIED OR REGISTERED MAIL DIRECTED TO BORROWER AT BORROWER'S LAST KNOWN ADDRESS; PROVIDED, HOWEVER, THAT THE FOREGOING SHALL NOT PREVENT LENDER FROM BRINGING ANY ACTION, ENFORCING ANY LIEN OR JUDGMENT OR EXERCISING ANY RIGHTS OR REMEDIES AGAINST BORROWER OR ANY COLLATERAL OR OTHER PROPERTY OF BORROWER, WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION. BORROWER WAIVES ANY OBJECTION TO VENUE AND ANY OBJECTION BASED ON A MORE CONVENIENT FORM IN ANY ACTION INSTITUTED UNDER THIS AGREEMENT. TO THE MAXIMUM EXTENT OF THE LAW, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM CONCERNING THIS AGREEMENT AND EACH OTHER LOAN DOCUMENT.

13. **SUCCESSORS AND ASSIGNS; AGENTS.** This Agreement and each other Loan Document to which Borrower is a party shall be binding upon Borrower and Borrower's legal representatives, administrators, heirs and executors, and successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower may not assign any of its rights or obligations under this Agreement or the other Loan Documents.

14. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and signed by Borrower and Lender. This Agreement and the other Loan Documents are the complete and final expression of the agreement between Lender and Borrower regarding the subject matter hereof and thereof. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

15. **NOTICE.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and shall be effective upon receipt by the noticed party. Acceptable methods for giving notices hereunder shall include first-class U.S. mail, hand-delivery, and nationally recognized commercial courier service. Regardless of the manner in which notice is provided, notices may be sent to the addresses for Lender and Borrower as set forth below the applicable party's signature to this Agreement or to such other address as any party may give to any of the others for such purpose in accordance with this Agreement.

16. **FURTHER ASSURANCES.** Borrower agrees to sign, deliver, and file any additional documents, agreements, instruments, or certifications that Lender may consider necessary or desirable to perfect, continue, and preserve the Obligations and Lender's rights with respect to the Collateral and to effect the transactions contemplated herein and in the other Loan Documents.

17. **CONFIDENTIALITY.** Lender will endeavor to maintain the confidentiality of the information Lender or Lender's agents obtain with respect to Borrower, except that Lender may disclose such information (I) in any litigation, arbitration, or other proceeding involving any Credit Party, the Obligations, or the Loan Documents; (ii) to any of Lender's affiliates; (iii) to any government or governmental or regulatory agency and any self-regulating authority; (iv) to Lender's accountants, auditors, counsel, and advisors; (v) to any of Lender's actual or prospective assignees or participants; (v) as may be required by court order or law, rule, or regulation; (vi) to the extent permitted or contemplated under any Loan Document; and (vii) to any other Person whom Lender reasonably believes to be a creditor of Borrower or any other Credit Party.

18. **NO WAIVER.** No failure or delay on the part of Lender to exercise any right under this Agreement or any other Loan Document or under applicable law shall operate as a waiver hereof or thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

19. **SURVIVAL OF CERTAIN TERMS.** All representations and warranties made in this Agreement and the other Loan Documents shall survive the making of any Advance and the delivery of any other Loan Document and shall continue in full force and effect until Payment in Full.

20. **COMMISSIONS.** Borrower understands that Lender (or its affiliates) may earn commissions or fees on insurance products which may be made available to or provided to Borrower or any or all other Credit Parties.

21. **COUNTERPARTS; ELECTRONIC SIGNATURES.** This Agreement and any amendments, waivers, or consents relating hereto may be executed in any number of counterparts and by different parties hereto or thereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which when taken together shall constitute but one and the same instrument. Any signature delivered by a party hereto or to any amendment, waiver, or consent relating hereto by facsimile transmission or by electronic email in Adobe Corporation's Portable Document Format (or PDF) shall be deemed to be an original signature hereto.

22. **ADDITIONAL WAIVERS.** To the extent legally permitted, Borrower additionally waives:

    A. **Acceleration.** Lender may declare all or any part of the Obligations Loan to be immediately due and payable, in which case, such Obligations shall be immediately due and payable; provided, however, that the Obligations shall automatically become immediately due and payable upon the occurrence of any Event of Default arising because of the commencement of any insolvency, bankruptcy, receivership, or similar proceeding.

    B. **Insurance Benefits.** The benefit of appraisals as provided under Article 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

    C. The notice of seizure provided under Article 2293 of the Louisiana Code of Civil Procedure;

9836

D. The 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

E. All other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

**23. EFFECT OF SIGNATURES.** By signing, Borrower agrees to the terms set forth in this Agreement and certifies that Borrower has received a copy of this Agreement and that it has completely read and understands this Agreement.

**IN WITNESS WHEREOF,** Lender and each Borrower have executed and delivered this Agreement as of the date first above written:

**LENDER:**

**AGRIFUND, LLC**

**By:** _____

**Name:** Paul Baessler

**Title:** Area Manager

**Address for notices:**

420 Throckmorton Street, Suite 1100
Fort Worth, TX 76102

Borrower:
Steven Lawrence Spence

Address for Notice :
Steven Lawrence Spence
13666 514th Ave
Vernon Center, MN  56090

By: _____
    Steven Lawrence Spence

Borrower:
Theresa Ann Spence

Address for Notice :
Steven Lawrence Spence
13666 514th Ave
Vernon Center, MN  56090

By: _____
    Theresa Ann Spence

9836

## UNITED STATES BANKRTUPCY COURT
## DISTRICT OF MINNESOTA

In Re:

Steven L. Spence
Theresa A. Spence

        debtors.

Bky No. 20-32780
Chapter 12.

---

## ORDER AUTHORIZING THE DEBTOR AUTHORITYTO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364

This case came before the court for hearing on March 17, 2021, on the debtors' motion to obtain post-petition financing pursuant to 11 U.S.C. § 364(c)(2). Appearances were noted on the record. Given the record, the exigent facts presented, and based on the written and oral record, the court makes the following findings and order,

THE COURT FINDS THAT:

a. On December 15, 2020, the debtors commenced this case under Chapter 12 of the United States Bankruptcy Code. The debtors have remained in possession of their assets and are continuing to operate and manage their farming operation.

b. An immediate need exists for the debtors to obtain funds for 2021 crop inputs and operating expenses. Without such funds, the debtor will not be able to plant and harvest 2021 crops. The debtor does not have the unencumbered funds necessary to meet such necessary expenses.

c. Agrifund has indicated a willingness to provide input financing to the debtor on a secured basis. Agrifund seeks a security interest in the debtors' 2021 crops to be grown and related proceeds from crop insurance and disaster assistance programs.

d. The 2021 crops are a new property to the estate and newly incurred debt would not encroach on any prior interest held by secured or unsecured parties in this bankruptcy.

e. The debtor is unable, pursuant to 11 U.S.C. §§ 364(a) or (b), to obtain unsecured credit allowable as an administrative expense under 11 U.S.C. § 503(b)(1).

THEREFORE, IT IS ORDERED:

1. The debtors are authorized to obtain credit in an amount up to $245,000.00 and to grant a lien in favor of Agrifund in the 2021 crop and collateral related to the 2021 crop, pursuant to 11 U.S.C. § 364(c)(2).

2. The debtor is authorized to comply with all the terms and conditions of any loan documents signed by Debtor and Agrifund, except to the extent that collateral granted under such loan documents is inconsistent with the terms of this order. This authorization includes, but is not limited to, executing all loan documents now or in the future necessary to carry out the provisions of this order and the loan documents, except as they may be inconsistent with this order or the Bankruptcy Code. In the event of any inconsistency between the terms and conditions of the loan documents or UCC Financing Statements and this Order, the provisions of this Order shall govern and control.

3. The debtors are authorized to use the proceeds to pay for ordinary course operating expenses from the date of this order through the maturity date of the loan.

4. The automatic stay imposed by 11 U.S.C. § 362(a)(4) is modified to allow Agrifund to perfect its security interest proposed to be granted in the 2021 crop and collateral related to the 2021 crop by taking any and all actions it deems necessary for such proposes, including, but not limited to UCC filings, CNS filings, and execution of government and

agency assignment forms necessary to perfect or protect a security interest in
governmental and agency payments and entitlements applicable.

5. Any administrative expense claims asserted by Agrifund and allowed by the Court shall
be subordinate to any allowed claims for legal fees and expenses of the debtors' counsel
and any compensation and reimbursement of expenses awarded to the Chapter 12
Trustee.

Dated:_____

_____
Katherine A. Constantine
United States Bankruptcy Judge

# United States Bankruptcy Court
## District of Minnesota

In re   Steven Lawrence Spence    Case No.   **20-32780**
     Theresa Ann Spence

                       Debtor(s)    Chapter   **12**

# PROOF OF SERVICE BY MAIL

I, Kristine M. Jensen, declare that I am a resident of or employed in the County of Mower , State of Minnesota .
My address is 300 First Street N.W., Austin, MN 55912. I am over the age of eighteen years of age and am not a
party to this case.

On March 3, 2021, I served the Notice of Motion and Motion to Incur Secured Indebtedness, Memorandum of
Law and Fact, and Order Authorizing the Debtor Authority to Obtain Post-Petition Secured Financing Pursuant
to 11 U.S.C.§ 364 on the parties listed below, by placing true and correct copies thereof enclosed in a sealed
envelope with postage thereon fully prepaid, in the United States Mail at Austin, Minnesota addressed as
follows:

Ag Distributing of Amboy, Inc
11219 US-169
Amboy, MN 56010

Ag Solutions
33615 County Road
Redwood Falls, MN 56283

Agrifund, LLC
420 Throckmorton Street
Suite 1100
Fort Worth, TX 76102-1760

Arnolds
1715 Howard Drive
Mankato, MN 56003

Bank Midwst
1920 Center Creek Dr
Fairmont, MN 56031

Bank of America
Attn: Bankruptcy
Po Box 982234
El Paso, TX 79998

Bank of America
P.O. Box 15796
Wilmington, DE 19886

Bremer Bank
8555 Eagle Point Blvd
Lake Elmo, MN 55042

Capital One Bank/Cabela's
350 Camino De La Reina
Suite 100
San Diego, CA 92108

Capital One/boscovs
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

Capital One/Younkers
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

Case Miller & Sneller
22024 State Hwy 4
Sleepy Eye, MN 56085

Central Farm Services
233 West Ciro Street
PO Box 68
Truman, MN 56088

Central Region Cooperative
225 Oak St. NE
Sleepy Eye, MN 56085

Chase Auto Finance
Attn: Bankruptcy
Po Box 901076
Fort Worth, TX 76101

Citi/Sears
Citibank/Centralized Bankruptcy
Po Box 790034
St Louis, MO 63179

Cnh Capital America Ll
Attn:Bankruptcy
Po Box 3600
Lancaster, PA 17604

Cnh Industrial Capital
Attn: Bankruptcy
Po Box 71264
Philadelphia, PA 19176

Collection Bureau Of Little Falls
Po Box 246
Little Falls, MN 56345

Comenity Bank/Herbergers
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218

Comenity Bank/Lane Bryant
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218

Comenity Bank/Pier 1
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218

Community Bank Mankato
PO Box 307
Vernon Center, MN 56090

Crystal Valley Coop
1911 Excel Drive
Mankato, MN 56001


Fifth Third Bank
Attn: Bankruptcy
Maildrop RCSB3E 1830 E Paris Ave SE
Grand Rapids, MI 49546

First Farmers and Merchants
20949 480th Ave
Lake Crystal, MN 56055

First National Bank of Omaha
Attn: Bankruptcy
Po Box 3128
Omaha, NE 68103

Hefty
191 Industrial St.
Le Roy, MN 55951

John Deere Credit
6400 NW 86th Street
PO Box 6600
Johnston, IA 50131-6600

Kohls/Capital One
Attn: Credit Administrator
Po Box 3043
Milwaukee, WI 53201

Midlandstbk/greensky
1797 Ne Expressway
Atlanta, GA 30329

Professional Credit Analysts of MN
24 N Front St
Po Box 99
New Ulm, MN 56073

Roger and Hollands
333 Apache Mall #245
Rochester, MN 55902

Rogers & Hollands
Attn: Bankruptcy
Po Box 879
Matteson, IL 60443

Sterling Jewelers, Inc.
Attn: Bankruptcy
Po Box 1799
Akron, OH 44309

Syncb/PPC
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896

Synchrony Bank/ JC Penneys
Attn: Bankruptcy
Po Box 965064
Orlando, FL 32896

Synchrony Bank/Amazon
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896

Synchrony Bank/Lowes
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896

US Bank/RMS CC
Attn: Bankruptcy
Po Box 5229
Cincinnati, OH 45201

Wells Fargo Dealer Services
Attn: Bankruptcy
1100 Corporate Center Drive
Raleigh, NC 27607

World's Foremost Bank
4800 Nw 1st Street
Suite 300
Lincoln, NE 68521

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 3, 2021.

_____
**Signature**