UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  BKY # 20-32780
        Chapter 12

Steven L. Spence
Theresa A. Spence

    Debtors.

**MODIFIED CHAPTER 12 PLAN OF REORGANIZATION
DATED MAY 4, 2021.**

## PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of five years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

## PART 2: LIQUIDATION ANALYSIS

The debtors' net equity in their property, after deducting the amounts of the secured claims and exemptions, is $207,812.72. Priority and non-priority unsecured creditors (but not including attorney's fees) will receive no less than $207,812.72 over the life of the plan. The debtors' liquidation analysis is attached to this plan as Exhibit A.

## PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtors' disposable income (income that is not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors.

## PART 4: LIVING EXPENSES

The debtors' projection of living expenses is $60,622.60. The debtors shall limit their annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in

effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtors, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein**. **Creditors shall only accept direct payments from the debtors if specified in the Plan.**

**Class 2: Debtors' Attorney's Fees.** Paul Sween of Adams, Rizzi & Sween, P.A. will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtors pre- and post-petition. Upon approval of such compensation by the Court, the debtors shall make a semi-annual payment for the remaining fees owed of $21,000.00 (after application of the debtors' pre-petition retainer of $275.00) to the Chapter 12 Trustee on or before December 1 and April 1. Additional approved debtors' attorney's fee applications shall be paid to the trustee on or before December 1 or April 1 of the following years. The debtors shall provide the additional funds as is necessary to provide for the Trustee's 5% fee when making these payments.

| Payment Due Date | Payment Amount | Trustee's Fees | Total Payment | Paid by: |
|---|---|---|---|---|
| December 1, 2021 | $3,225.00 | $161.25 | $3,386.25 | Trustee |
| April 1, 2022 | $3,500.00 | $175.00 | $3,675.00 | Trustee |
| December 1, 2022 | $3,500.00 | $175.00 | $3,675.00 | Trustee |
| April 1, 2023 | $3,500.00 | $175.00 | $3,675.00 | Trustee |
| December 1, 2023 | $3,500.00 | $175.00 | $3,675.00 | Trustee |
| April 1, 2024 | $3,500.00 | $175.00 | $3,675.00 | Trustee |
| TOTAL | $20,725.00 | $1,036.25 | $22,197.00 | |

## PART 6: SECURED CLAIMS

**Class 1: Community Bank Mankato.**

(a) <u>Claim</u>. The claim amount, as of the date of filing of the bankruptcy case was $440,681.84. The claim is over-secured and CB is entitled to interest on such claim, and any reasonable fees, costs, or charges pursuant to 11 U.S.C. § 506(b).

(b) <u>Collateral</u>. The debtors acknowledge that the indebtedness owed to CB is secured by the real estate, farm equipment, titled vehicles, farm products and 2020 grain

proceeds. The claim is secured by real property located in Minnesota ("Real Property Collateral") as further described in the following mortgages:

(i) Real Estate Mortgage in the principal amount of $1,011,500.00, dated May 9, 2019, and recorded with the Blue Earth County Recorder on May 20, 2019, as Document No. 571CR832 ("First Mortgage") currently secured by:

The Northwest Quarter of the Northeast Quarter (NW 1/4 NE 1/4) of Section Thirty-two (32), Township One Hundred Six (106) North, Range Twenty-eight (28) West.

The South 100.00 feet of the East 640.00 feet of the Southwest Quarter of the Southeast Quarter of Section 29, Township 106 North, Range 28 West.

That part of Southeast Quarter of the Southwest Quarter of Section 36, Township 106 North, Range 29 West, Blue Earth County, Minnesota, described as follows:

Beginning at the South Quarter corner of said Section 36; thence on an assumed bearing of North 0 degrees 11 minutes 47 seconds West, along the north-south quarter line of said section, a distance of 340.00 feet to an iron monument; thence North 89 degrees 47 minutes 31 seconds West a distance of 321.00 feet to an iron monument; thence South 0 degrees 11 minutes 47 seconds East a distance of 340.00 feet to an iron monument located on the south line of said section; thence South 89 degrees 47 minutes 31 seconds East, along said south line, a distance of 321.00 feet to the point of beginning.

("Homestead"); and

(ii) Real Estate Mortgage in the principal amount of $125,000.00, dated May 27, 2020, and recorded with Blue Earth County Recorder on June 2, 2020, as Document No. 580CR282 ("Second Mortgage" collectively, with the First Mortgage the "Mortgages") secured by:

The East 15 acres of the North Half (N ½) of the Southeast Quarter of the Southeast Quarter (SE¼ SE¼) of Section 33, Township 106 North, Range 28 West of the Fifth Principal Meridian, Blue Earth County, Minnesota.

("Second House").

The indebtedness is also secured by certain personal property of the debtors (the "Personal Property Collateral") as evidenced by an Agricultural Security Agreement dated May 9, 2019 (the "Security Agreement"). CB's security interest is perfected by filing the UCC-1 Financing Statement with the Minnesota Secretary of State on June 2, 2016, as filing number 890655400025, as amended by UCC-3 Financing Statement filed on May 9, 2019 as filing number 1084386700025 and by filing CNS Statutory Lien on March 17, 2014, as Filing No. 201435883801, as continued by Continuation Statement filed on February 8, 2019, as Filing No. 1067689700021, and CNS Statutory Lien on September 9, 2019, as Filing No. 1100022200034 (collectively the "UCCs"). The Personal Property Collateral also includes the 2020 crop, and any and all crop insurance proceeds, refunds, farm program payments, whether from or through any federal or state government agency or program or otherwise, including any other program of the United States Department of Agriculture, all Federal Crop Insurance policies, and the proceeds and payments thereof, and all government program payments including without

limitation, all program payments found on USDA form CCC-36 and all additions to, replacement of and substitutions for form CCC-36. (collectively the "2020 Crop Proceeds"). The 2020 Crop Proceeds include, but are not limited to, the following amounts and checks:

| **2020 Crop Proceeds Check Numbers** | **Date Written from Coop** | **Value** | **Current Status:** |
|---|---|---|---|
| 561269 | 1/26/2021 | $12,105.48 | Remains with debtors |
| 561270 | 1/26/2021 | $6345.15 | Given to CB |
| 561255 | 1/15/2021 | $21,355.82 | Given to CB and used to pay crop insurance |
| 561344 | 3/16/2021 | $31,497.74 | Remains with debtors |
| 561254 | 1/15/2021 | $11,157.17 | Remains with debtors |
| 561343 | 03/16/2021 | $46,404.80 | Remains with debtors |
| **Government Payments Received Post-Petition** | | | |
| WHIP Payment | 03/19/2021 | $13,978.50 | Placed in Escrow Acct. at MinnStar Acct # 208-9600 |

The Real Property Collateral, the Personal Property Collateral, and the 2020 Crop Proceeds are hereinafter referred to as the "Collateral".

    (c) <u>Treatment</u>. The secured claim of CB shall be treated as follows:

        (i)    <u>Equipment</u>. CB shall have a lien, to the same extent, validity and priority as its respective pre-petition liens, upon the post-petition rights of the debtors as to the pre-petition and post-petition equipment of the debtors. The lien shall be deemed properly perfected without any further act or deed on the part of the debtors or CB. The debtors stipulate and agree that CB has a first and priority pre-petition lien in the debtors' machinery and equipment. In the event the debtors sell any of their personal property, including equipment, following the Effective Date, CB shall receive all proceeds.

(ii) <u>Sale of Second House</u>.  The debtors will list the Second House for sale by May 1, 2021 and will sell the Second House by July 1, 2021.

As part of a prior Forbearance Agreement between the parties signed on May 27, 2020, the debtors executed a deed in lieu of foreclosure for the Second House ("Second House Non-Merger Deed") to be held by CB's attorney, Gislason & Hunter LLP, c/o Jennifer G. Lurken, in escrow without filing, until certain conditions were met.  However, these conditions were stayed when the debtors filed their petition.  CB's attorney shall continue to hold the Second House Non-Merger Deed in escrow.  If debtors do not list the Second House by May 1, 2021 or sell the Second House, by July 1, 2021, or have a valid, signed purchase agreement with a third party other than the debtors' daughter and son-in-law that would close before August 1, 2021, CB may notify the debtors of the default.  If the default is not cured within ten (10) days of providing notice to the debtors' attorney Paul Sween by email at psween@adamsrizzisween.com, CB may file an affidavit of non-compliance requesting entry of an order granting relief from the 11 U.S.C. § 362(a) automatic stay so that CB may record the Second House Non-Merger Deed.  The debtors and the Bank agree that 14-day period contemplated under Fed. R. Bankr. P. 4001(a)(3) may be waived.  Debtors agree to surrender possession of the Second House upon entry of an order granting relief from stay.  The debtors shall not lease or otherwise allow occupancy of the Second House and any agreement to lease the premises or otherwise allow occupancy is unenforceable.  The debtors also admit there are no tenants living in the Second House as that term is defined by Governor Walz's Executive Order 20-14, 20-73 and 20-79 ("Executive Orders") and the debtors agree that, the Executive Orders, and corresponding eviction moratoriums, are not applicable hereto.  The debtors agree that if someone is living in the Second House after July 1, 2021, they are a squatter and can be evicted.  The parties agree that upon CB's recording of the Second House Non-Merger Deed that CB will proceed to sell the Second House in a commercially reasonable manner and, as consideration for the Second House Non-Merger Deed, will thereafter apply the proceeds received from the sale to the CB's claim.

(iii) <u>2020 Crop Proceeds</u>.  Upon the Effective Date, debtors will turnover $60,000.00 of the 2020 Crop Proceeds to CB and CB will apply such proceeds to CB's claim.  The debtors will use the remaining $60,000.00 of 2020 Crop Proceeds for expenses. The funds debtors have received to date as Cash Collateral are included in their $60,000.00 of Cash Collateral.  If the 2020 Crop Proceeds exceed $120,000.00, CB and the debtors agree to split the proceeds over and above $120,000.00, with fifty percent (50%) turned over to CB and fifty percent (50%) turned over to the debtors as Cash Collateral to use for living expenses.  CB shall have a lien on the debtors' 2021 crop, subordinate to the security interest of Agrifund in the 2021 crop, to the same extent, validity and priority as its respective pre-petition liens. The lien shall be deemed properly perfected without any further act or deed on the part of the debtors or CB.  CB shall release its lien in the 2021 crop upon receipt of the December 1, 2021 payment set forth below.

(iv) <u>Interest</u>.  As of the date of the filing of the bankruptcy case, interest on CB's claim shall accrue at the rate of 6.75%.  This interest rate shall adjust at the Wall Street Journal Prime Rate plus 1.250 percentage points, adjusted if necessary, for any minimum rate of 6.750% and maximum rate limitation as allowed by applicable law.

(v) <u>Repayment of Indebtedness</u>.  Following the application of the Second House sales proceeds and 2020 crop proceeds, the remaining indebtedness shall be amortized over twenty (20) years and shall be paid in installments of principal and accrued interest of twenty thousand dollars ($20,000.00, plus Trustee's fees) on December 1, 2021 and ten thousand dollars ($10,000.00, plus Trustee's fees) on April 1, 2022 and continuing until April 1, 2024 ("Maturity Date"), when the remaining principal and interest is due in full.  On the Maturity Date, the outstanding claim, including principal, accrued and unpaid interest, and all other amounts, shall be immediately due and payable in full without notice or demand.  The debtors may prepay the claim in whole or part at any time.  If the debtors fail to make payments as scheduled, CB may notify the debtors of the default.  If the default is not cured within ten (10) days of providing notice to the debtors' attorney Paul Sween by email at psween@adamsrizzisween.com, CB may file an affidavit of non-compliance requesting entry of an order granting CB relief from the 11 U.S.C. § 362(a) automatic stay as to all of its collateral.  The debtors and the Bank agree that 14-day period contemplated under Fed. R. Bankr. P. 4001(a)(3) may be waived.

| Payment Due Date | Payment Amount | Trustee's Fees | Total Payment | Paid by: |
| --- | --- | --- | --- | --- |
| December 1, 2021 | $20,000 | $1,000 | $21,000 | Trustee |
| April 1, 2022 | $10,000 | $500 | $10,500 | Trustee |
| December 1, 2022 | $20,000 | $1,000 | $21,000 | Trustee |
| April 1, 2023 | $10,000 | $500 | $10,500 | Trustee |
| December 1, 2023 | $20,000 | $1,000 | $21,000 | Trustee |
| April 1, 2024 | TBD | | | Direct |

(vi) <u>Additional Covenants</u>.  The customary non-monetary loan covenants contained in the Loan Documents are incorporation into this Plan including, but not limited to, the right of inspection and the covenant of the debtors to maintain and provide proof of insurance, including crop insurance.

(d) <u>Compliance with Loan Documents; Existing Stipulations and Orders</u>.  Except as expressly modified by this Plan, the Loan Documents and existing stipulations and orders shall remain unmodified and in full force and effect, and the debtors shall fully and timely comply with all of the terms and conditions of the Loan Documents and

existing stipulations and order as modified by this Plan including non-monetary covenants. Except as provided in this Plan, the enforceability of the Loan Documents and Existing stipulations and order shall in no way be compromised, diminished or voided.

(e) <u>Default; Right to Cure; Remedy</u>. As part of a prior Forbearance Agreement between the parties signed on May 27, 2020, the debtors executed a deed in lieu of foreclosure for approximately 30 acres of tillable land surrounding the debtors' house and included as collateral pursuant to the First Mortgage, ("Tillable Acre Non-Merger Deed") to be held by CB's attorney, Gislason & Hunter LLP, c/o Jennifer G. Lurken, in escrow without filing, until certain conditions were met. However, these conditions were stayed when the debtors filed their petition. The parties agree that CB's attorney shall continue to hold the Tillable Acre Non-Merger Deed in escrow. The parties also agree that debtors will cooperate with CB and the county to have the tillable acres separated for purposes of the county issuing a separate parcel identification number ("PIN"). To do so, the parties agree that debtors will use funds from the $60,000.00 debtors received as cash collateral to pay the real estate taxes that must be paid before the county will issue a separate PIN.

The failure of the debtors to comply with the terms and conditions related to CB's claim shall be an event of default. CB may notify the debtors of the default. If the default is not cured within ten (10) days of providing notice to the debtors' attorney Paul Sween by email at [psween@adamsrizzisween.com](mailto:psween@adamsrizzisween.com), CB may file an affidavit of non-compliance requesting entry of an order granting relief from the 11 U.S.C. § 362(a) automatic stay so that CB may record the Tillable Acres Non-Merger Deed. Debtors agree to surrender possession of the Tillable Acres upon entry of an order granting relief from stay. The debtors and the Bank agree that 14-day period contemplated under Fed. R. Bankr. P. 4001(a)(3) may be waived.

The parties agree that upon CB's recording of the Tillable Acres Non-Merger Deed that CB will proceed to sell the Tillable Acres in a commercially reasonable manner and, as consideration for the Tillable Acres Non-Merger Deed, will thereafter apply the proceeds received from the sale to CB's claim.

**Class 2: Agrifund, LLC (ARM):** The secured claim of Agrifund existing as of the date of filing has been paid in full directly by the debtors from 2020 crop proceeds. Pursuant to the Court's order approving the debtors' Motion to Incur Secured Indebtedness, the debtors have a line of credit with Agrifund up to $245,000.00, at a 10% interest rate for 2021 crop inputs. Agrifund has a first priority security interest in the 2021 crop and will be paid directly by the debtors from 2021 crop proceeds. The projected loan amount is listed in Exhibit B.

**Class 3: Real Estate Taxes:** The debtors will directly pay all outstanding real estate taxes to Blue Earth County, including interest, fees, and charges, within 30 days of confirmation of the plan including prepetition arrears and first half taxes due May 15, 2021. The debtors shall timely pay all property taxes as those payments come due.

| Delinquent Real Estate Taxes 2020 (taxes including additional interest and taxes) | $3851.77 |
|---|---|
| First-Half Real Estate Taxes 2021 (taxes including additional interest and taxes) | $2057.00 |
| Second Half Real Estate Taxes for Homestead ** | $1,831.95 |
| **Total Expected to be Paid in first 30 days** | **$7,640.72** |

**The second-half taxes require payment in order to separate the 33 tillable acres from the Homestead and receive a separate parcel number as required by CB.

**Class 4: Wells Fargo.** The debt owed to Wells Fargo is secured by a 2008 Chevrolet Tahoe. Wells Fargo filed a secured claim in the amount of the $2,945.45. The debtors' child has paid this claim directly on pre-petition contract terms and the claim has been paid in full.

## PART 7: PRIORITY AND OTHER ADMINISTRATIVE CLAIMS

This class consists of filed and allowed priority and allowed administrative expense claims (other than those separately addressed under Part 5 and Part 10). Only creditors for which proofs of claim have been filed and allowed will be paid under this Part. The amounts listed below are estimates. The Trustee will pay the allowed portion of the priority amount listed in the proof of claim for the creditors listed below. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance or classification of the claim.

**Class 1: Internal Revenue Service.** The debtors estimate priority debts owing to the IRS in the amount of $39,313.43. The debtors shall pay this amount, plus five percent Trustee's fees, on the following schedule. The debtors may prepay the claim in whole or part at any time.

| Payment Due Date | Payment Amount | Trustee's Fees | Total Payment | Paid by: |
|---|---|---|---|---|
| December 1, 2021 | $7,862.69 | $393.14 | $8,255.82 | Trustee |
| December 1, 2022 | $7,862.69 | $393.14 | $8,255.82 | Trustee |
| December 1, 2023 | $7,862.69 | $393.14 | $8,255.82 | Trustee |
| December 1, 2024 | $7,862.69 | $393.14 | $8,255.82 | Trustee |
| December 1, 2025 | $7,862.69* | $393.14* | $8,255.82 | Trustee |
| **TOTAL** | **$39,313.45*** | **$1,965.70*** | **$41,279.15*** | |

*The debtors will make a payment by December 1, 2025 sufficient to pay any remaining allowed IRS priority claim in full, plus five percent Trustee's fees.

**Class 2: Minnesota Department of Revenue.** The debtors estimate priority debts owing to

the Minnesota Department of Revenue in the amount of $24,189.75. The debtors shall pay this amount, plus five percent Trustee's fees, on the following schedule. The debtors may prepay the claim in whole or part at any time.

| Payment Due Date | Payment Amount | Trustee's Fees | Total Payment | Paid by: |
|---|---|---|---|---|
| December 1, 2021 | $4,837.95 | $241.90 | $5,079.85 | Trustee |
| December 1, 2022 | $4,837.95 | $241.90 | $5,079.85 | Trustee |
| December 1, 2023 | $4,837.95 | $241.90 | $5,079.85 | Trustee |
| December 1, 2024 | $4,837.95 | $241.90 | $5,079.85 | Trustee |
| December 1, 2025 | $4,837.95* | $241.90* | $5,079.85* | Trustee |
| **TOTAL** | **$24,189.75*** | **$1,209.50*** | **$25,399.25*** | |

*The debtors will make a payment by December 1, 2025 sufficient to pay any remaining allowed Minnesota Department of Revenue priority claim in full, plus five percent Trustee's fees.

## PART 8: NON-PRIORITY UNSECURED CLAIMS

**Class 1.** This class consists of filed and allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, allowed non-priority governmental claims arising under 11 U.S.C. § 1232, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of allowed claims existing on the date of disbursement. Only creditors for which proofs of claim have been filed will be paid under this Part. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. Filed unsecured claims total $189,562.64. The debtors will pay all filed and allowed unsecured claims in full on the following schedule:

| Payment Due Date | Payment Amount | Trustee's Fees | Total Payment | Paid by: |
|---|---|---|---|---|
| December 1, 2021 | $37,912 | $1,895.60 | $39,807.60 | Trustee |
| December 1, 2022 | $37,912 | $1,895.60 | $39,807.60 | Trustee |
| December 1, 2023 | $37,912 | $1,895.60 | $39,807.60 | Trustee |
| December 1, 2024 | $37,912 | $1,895.60 | $39,807.60 | Trustee |

| December 1, 2025 | $37,914.64* | $1,895.74* | $39,810.38* | Trustee |
|---|---|---|---|---|
| **TOTAL:** | **$189,562.64*** | **$9,478.14*** | **$199,040.78*** | |

*The debtors will make a payment by December 1, 2025 sufficient to pay any remaining filed and allowed non-priority unsecured claims in full, plus five percent Trustee's fees. The debtors agree that filed and allowed unsecured claims will be paid in full under this plan and any modified plan filed in this case.

## PART 9: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 (1) shall be treated as non-priority unsecured claims arising before the date on which the petition is filed; (2) shall be treated under Part 8 of the plan (Non-Priority Unsecured Claims), provided that the claim is not otherwise disallowed, (3) shall not be entitled to priority treatment under 11 U.S.C. § 507; and (4) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtor files a tax return after the filing of the petition for a period in which a claim under 11 U.S.C. § 1232(a) arises, and the claim relates to the tax return, the debtor shall serve notice of the claim pursuant to 11 U.S.C. § 1232(d)(2). Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

## PART 10: EXECUTORY CONTRACTS AND LEASES

Part 10 consists of executory contracts and leases existing as of the date of filing arising under 11 U.S.C. § 365. All such executory contracts and leases are rejected unless specifically assumed in this section. The debtor assumes the following executory contracts and leases:

- Farm Land Lease (Glen Emery): 331.28 Acres – 1 year lease worth $82,500.00
- Farm Land Lease (Rita Cornish): 138 – 1 year lease worth $31,050.00

The leases will be paid with financing approved by Court Order on April 1, 2021. The debtors are current on these lease obligations and no cure provisions are proposed.

## PART 11: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtors propose to continue their farming operations and make the plan payments out of farm or other income. The debtors' projections of income, operating expenses, and plan payments are attached as Exhibit B. debtors have also included a Cash Flow analysis created for the 2021 crop year in order to describe in more detail of some of the crop costs.

## PART 12: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the

same and are incorporated herein by reference. Either the debtors or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtors have an interest in real estate without violation of the automatic stay. The Bank's blanket lien over the debtors' property will remain in effect after the plan until the claim balance has been paid pursuant to the terms of the plan.

## **PART 13: GENERAL PROVISIONS**

1. The Court shall retain jurisdiction over the debtors and their property for the term of the plan. Property of the estate vests in the debtors upon completion of plan payments due during the term of the plan.

2. As part of the continuing farm operation, the debtors shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtors shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

3. For the duration of the Chapter 12 plan, the debtors shall seek court approval to obtain credit or incur debt outside the ordinary course of business.

4. For the duration of the Chapter 12 plan, the debtors shall seek court approval to use, sell, or lease property outside the ordinary course of business.

/e/_Paul V. Sween
Tele: 507-438-4632
Fax: 507-433-8890
Email: psween@adamsrizzisween.com

Signature: _____/e/ Paul V. Sween_____

Signed: /e/_Steven L. Spence

Debtor 1:_Steven L. Spence

Dated: _03/14/2021

Signed: /e/_Theresa A. Spence

Debtor 2: Theresa A. Spence

Dated: 03/14/2021

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:  BKY # 20-32780
 Chapter 12
Steven L. Spence
Theresa A. Spence,

      debtors.

**SWORN DECLARATION FOR PROOF OF SERVICE**

      The undersigned, being an employee of Adams, Rizzi & Sween, P.A., declares that on the date indicated below, I served true and correct copies of the attached Chapter 12 Plan and Exhibits upon all entities named below by first class mail postage prepaid and to any entities who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System:

    UNITED STATES ATTORNEY
    U.S. COURTHOUSE
    300 S 4TH STREET
    SUITE 600
    MINNEAPOLIS, MN 55415

    ALL CREDITORS ON ATTACHED MATRIX.

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: 03/15/2021                /e/ _____